FILED
JOHN P. HEHMAN
CLERK

2013 APR 29 AM 9:37

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

United States District Court For
The Southern District Of Ohio

Ellyn J. Burnes
Plaintiff *pro se*

2:13CV0405

v.                                              Case No._____

                                                JUDGE FROST

President Barack Obama et al.,                  MAGISTRATE JUDGE KING
Defendant

United States District Court For
The Southern District Of Ohio


Ellyn Burnes
3 ½ Ohio Ave.
Athens, OH
45701
740-706-1101

Plaintiff *pro se*

v.

President Barack Obama
The White House
1600 Pennsylvania Ave.
Washington, D.C. 20500
202-456-1111

Defendant

v.

Eric Holder,  Attorney General of the United States
Robert Mueller Director of the Federal Bureau of Investigation
And Unknown DOJ and FBI Agents
U. S. Department of Justice
950 Pennsylvania Ave.
Washington, D.C.
202-514-2000

Defendants

v.

Chuck Hagel, Secretary of Defense
Leon Panetta former Secretary of Defense
And Unknown Department of Defense Agents
The Pentagon,
1400 Pentagon Pedestrian Tunnel
Washington, D.C. 20301
703-545-6700

Defendants

v.

Ohio University
President McDavis
Ohio University Police Department
O.U. Legal Office
10 E. Union St.
Athens, Ohio
740-593-2626

Defendants

v.

WOUB
Mr. Tom Hodson
Radio and Television Building
College St.
Athens, OH 45701
740-593-1771

Defendants

v.

City of Athens, Ohio
Mayor Paul Wiehl
Chief Tom Pyle APD
City Building
Athens, OH
740-592-3338

Defendants

v.

Athens County  Sheriff Department
Sheriff Pat Kelly
Athens County Courthouse
Athens, OH 45701
740-592-3264

Defendants

v.

Athens Bar Association
And Other Attorneys
C/O Athens County Courthouse
Athens, OH 45701

Defendants

v.

The Athens News
Mr. Bruce Mitchell
Mr. Tom Eslocker
14 North Court Street
Athens, OH 45701
740-594-8219

Defendants

v.

The Roman Catholic Church
St. Pauls Church
College St.
Athens, OH
45701
740-593-7822

Defendant

v.

Church Of Jesus Christ of Latter Day Saints
Chief Elder
7795 Lemaster Rd.
Athens, OH
45701
740-797-3396

Defendant

v.

American Telephone and Telegraph "AT&T"
208 South Akard St.
Dallas, TX 75202
210-821-4105
Attn: D. Wayne Watts, General Counsel

Defendant

v.

Verizon Office Corporate Headquarters
140 West St.
New York, N.Y. 10007
1-212-395-1000
Attn: General Counsel

Defendant

v.

MSNBC
NBC Nightly News
Ms. Rachel Maddow
Mr. Brian Williams
Mr. Tom Brokaw
30 Rockefeller Plaza
New York, N.Y. 10112
212-664-4444
Attn: General Counsel

Defendants

v.

CNN Corporate Office Headquarters
CNN News
Mr. Wolf Blitzer
1  CNN Center
Atlanta, GA 30348
1-404-827-1700
Attn: Louise Sams, General Counsel

Defendants

v.

American Broadcasting Company
ABC  News
Diane Sawyer
47 W. 66th St.
New York, N.Y. 10023
212-456-2700

Defendants

v.

Russ Funk
Addison and Funk
202 Wesbanco Building
Marietta, OH
740-373-6688

Defendant

**United States District Court for the
Southern District of Ohio**

### COMPLAINT

Plaintiff Ellyn J. Burnes, brings this action against defendants and alleges the following: This is a complaint for temporary restraining order, permanent injunction, compensatory, hedonic, and punitive damages greater than twenty-five thousand dollars. This is, in part, a "Bivens" style suit alleging that federal agents and state agents acting unlawfully under federal and state authority are responsible for unconstitutional conduct resulting in violation of the plaintiff's rights. Further, plaintiff alleges that several media companies have tracked the plaintiff ostensibly in the context of pursuing a story but that they are also participants in illegal search and seizure of the plaintiff, including mind reading, and conspiracy to deprive the plaintiff's constitutional rights. Plaintiff shows within the complaint a pattern of wrongful and discriminatory actions on the part of the defendants that span the previous twenty five (25) years. However, the **monetary specifics** of the damage awards will be filed after the defendants have been enjoined and restrained from violating the rights of the plaintiff and she is able to prepare her claims enjoying privacy, and hopefully, attorney–client privilege. Further, it may be necessary to amend the complaint for damages following discovery for enjoining the defendants, if it please the court.

### Preliminary Statement

#### Nature of the Action and Facts Common to All Counts

1. This is a civil rights action alleging extraordinary circumstances that have continued unrelieved and un-remedied for a long period of time. Plaintiff alleges that she is under mind reading surveillance being conducted by the United States government and that the government has conspired with other defendants to attack her identity and prevent the remedying

of plaintiff's extremely illegal and criminal circumstances in favor of plaintiff's constitutional rights.

2. Plaintiff petitions the court as an individual pro se complainant. She alleges extraordinary circumstances because she is totally deprived of privacy of person, home, actions, whereabouts, conversation, privacy of thinking; and totally deprived of freedom from illegal search and seizure at all times in violation of her constitutional rights, constituting an unlawful arrest; a non-custodial detention where plaintiff is not incarcerated but is never beyond the intrusive prying eyes and ears of government and their agents in violation of her First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendment rights under the United States Constitution.

3. Plaintiff states that she is being subjected to mind reading in a continuous illegal search of her brain and thinking processes using the advanced technology of government electronic surveillance which she alleges is unlawful human experimentation and involuntary servitude in violation of the Nuremburg Code, and of her Fourth and Thirteenth Amendment rights.

4. Plaintiff has reason to believe that the media defendants and political sub-division defendants have had access to the data product generated by the U.S. military and law enforcement in illegally searching the thinking content of the plaintiff and that the plaintiff's life as a government hostage is under the daily scrutiny of the media defendants, making them, in effect, agents of government in the context of the plaintiff's circumstances.

5. Plaintiff states further that she is subjected to random daily assault by a high tech remote military weaponry device that assaults using microwaves and that her life is in danger of serious maiming, injury, or death at any moment in violation of her Fourth Amendment rights to freedom from brutality by government agents in a detention situation.

6.  Plaintiff  is assaulted typically several to many times daily by the federal agent/guards who are staking the plaintiff out by remote surveillance and using surveillance guided microwave technology.

7.  Plaintiff alleges she is in daily pain and sometimes extreme pain as a result of assault by government agents using microwave technology to attack  her person.

8.  Plaintiff alleges that the thrust of the government's corrupt scheme is to continue the plaintiff's unlawful and enslaved status indefinitely, and to keep secret a scheme of illegal human experimentation using mind reading by remote surveillance, to prevent government from being held accountable for its human rights crime against the plaintiff, and to prevent further public knowledge of outrageous government conduct in human rights abuses.  She is also subjected  to daily verbal and  psychological abuse from intrusion by government agents using high tech  remote devices for the purpose of harassing and oppressing her.

9.  Plaintiff asserts that her person and identity are the nexus of  the conspiratorial thrust of all of the defendants' activities.  She alleges that all defendants acted upon illegally acquired knowledge of the plaintiff in violation of her United States Constitution Fourth Amendment rights and by their own actions furthered a conspiracy to violate the constitutional rights of the plaintiff.

10.  Alternatively, all defendants individually failed to take action to stop a civil rights conspiracy in violation of the plaintiff's rights.

## Jurisdiction and Venue

11.  This action arises under the  First, Fourth, Fifth, Ninth, Thirteenth,  and Fourteenth Amendments  to the Constitution of the United States and 42 USC sec. 1983 and 1985(2) (3),

1986. Jurisdiction is conferred on this Court under 28 U.S.C. sec. 1331, 1343. Monetary damages alone are inadequate and plaintiff has suffered irreparable harm from defendants' actions.

## Type of Proceeding

12. This is a civil rights action. It is also an equitable action for preliminary and permanent injunctive relief under Federal Rules of Civil Procedure F.R.C.P. Rule 65 enjoining defendants, and each of them, their agents, assigns, and employees from conspiring to violate the plaintiff's Fourth Amendment and other rights secured by the United States Constitution including her rights to freedom from unlawful search and seizure, violation of privacy rights, freedom from intrusion against the plaintiff's right to seclusion, freedom from stalking or following of the plaintiff or any other means of obstructing the plaintiff's rights to privacy, personal security, freedom of personal conscience, representation by counsel, privacy of thinking, privacy of conversation and utterance, privacy of action, privacy of home, travel, her individual personal right to exclusive control over her personal information, and her individual exclusive rights to petition for redress, access to court, due process, and the equal protection of laws. Further, plaintiff is denied a secret ballot in voting because of mind reading surveillance.

## Plaintiff

13. Plaintiff Ellyn J. Burnes, is a divorced bisexual woman, aged 64 years old who resides singly at 3 ½ Ohio Ave. Athens, OH 45701.

14. At all times relevant to this complaint the plaintiff has been unconstitutionally deprived of privacy rights, and continuously and unconstitutionally subjected to unlawful search and seizure which is known at the highest levels of the U.S. government and to state and local governments.

15. Plaintiff alleges it is also known also to the media defendants, Ohio University, and to the

agents of many churches who have followed plaintiff, made comments, and contributed to the public oppression of plaintiff by public stalking and commentary which has been widely known of and widespread.

16. Plaintiff states that she is not a member of a religious organization and at all times relevant to this complaint was not a member of a religious organization; does not act to benefit any religious organization at any time in taking action to pursue these claims; and has never been the agent for any religious organization, but that she has been followed by religious agents because of her illegally searched status, because she is bisexual, and because her whereabouts have been made known.

17. At all times relevant to this complaint the plaintiff has been a civilian U.S. citizen, a pacifist, and against all forms of violence including the bearing of arms and surveillance technology.

18. At all times relevant to this complaint plaintiff has not been an agent for any government, governmental agency, or any political subdivision, public utility, religious organization, or any of their agents.

19. Plaintiff brings these claims as an individual pro se claimant.

## Defendants

20. Defendants are President Barack Obama, Eric Holder Attorney General of the United States and unknown DOJ and FBI agents, Chuck Hagel United States Secretary of Defense and Leon Panetta former Secretary of Defense, unknown Defense Department agents, President McDavis and Agents for Ohio University and the Ohio University Police, Mayor Wiehl, Chief Pyle, and unknown agents for The City of Athens, OH, Sheriff Kelley and agents for Athens County, OH, Brian Williams and NBC News, Rachel Maddow and MSNBC , Wolf Blitzer and

CNN News,  Diane Sawyer and ABC News,  and unknown agents of AT&T and Verizon and other communication companies.

## All Defendants Can Be Deemed Federal Agents

21.  All defendants  have acted to deprive the plaintiff of federally guaranteed rights using U.S. government surveillance through various government agencies.

22.  Therefore all defendants can be deemed as federal agents acting to further the corrupt scheme of the federal government in violation of the plaintiff's rights.

23.  Thus, the  plaintiff alleges that she is not free ,and  is a hostage of both the government and the media defendants  and is entitled to a **Temporary Restraining Order** and **Permanent Injunction.**

## Count 1

**Unlawful Arrest, Detention,  and Illegal Search and Seizure in Violation of Plaintiff's US Constitution Fourth Amendment Rights.**

24.  Plaintiff alleges that the continuous daily surveillance by the United States Departments of Defense and Justice and their agents such as AT&T  and other public utilities, using advanced technology, electronic surveillance, and mind reading surveillance constitutes an unlawful search and seizure of her person in violation of plaintiff's Fourth Amendment rights under the U.S. Constitution.

25.  Plaintiff alleges that the unlawful seizure of the plaintiff's  person by continuous electronic surveillance and the continuous unlawful search of plaintiff's thinking content constitutes an unlawful arrest and detention under the Fourth Amendment because plaintiff is never beyond a police and military watch, of  her whereabouts, activities, and thinking content  and  is not free to

leave the country. She is stalked by police and subjected to high tech surveillance outside the country as well.

26.   Plaintiff  asserts that although she is not incarcerated that she is under surveillance continuously, that some of the surveillance is satellite deployed and that she enjoys no privacy or freedom from government watch, listening, and mind reading at all times.

27.   Plaintiff alleges that the defendants and their agents have daily unlawfully searched plaintiff's apartment at 3 ½ Ohio Ave. Athens, OH using remote electronic and satellite surveillance.

28.   Plaintiff alleges that unknown agents of the defendants  have physically trespassed her apartment at various times in violation of her Fourth Amendment rights.

29.   Plaintiff is surveilled and followed where ever she goes, be it for a walk, to the grocery store, out in her car, out of state,  or out of the country.

30.   Plaintiff alleges that she has been surveilled by local police departments  everywhere, including rural Honduras in June 2008, and in Botswana and South Africa in 2009, and 2011 respectively.

31.   The non-incarcerated detention of the plaintiff is complete.  She has no means of escaping the intrusive grip of government rendering her life without any privacy and under the depraved and despicable glare of government and their agents.

32.   Plaintiffs personal information, under the purview of government and their agents, has been dispersed widely and commented upon publically, subjected her identity to defamation, by suggestion of fraud, caused endless pain and suffering from intrusion, ridicule, frequent drive bys, comment, phone harassment, abuse about her personal life,  abuse about her  illegal status as

a government hostage, and abuse about her cause of action for her U.S. Constitution Fourth Amendment rights.

33.    Plaintiff's pain and suffering has included extreme physical and mental abuse,  loss of family life for long periods of time, irreparable estrangement from some family members because of harm caused by the malicious design of  government and its agents, loss of intimate life  because of intrusion and illegal deprivation of privacy, loss of property,  loss of economic rights, and employment opportunity because of defamation, conspiracy, and plaintiff's status as a hostage which plaintiff alleges amounts to slavery under sadistic government surveillance.

34.   Plaintiff alleges that since at least 1988, there have been no lapsed days when the plaintiff was not surveilled and subjected to a search which she knows from persons following her, police following her or making a show of authority, telephone harassment, torture of her person by electronic microwave assault, wireless harassment in her home by U.S. agents, and flyovers of aircraft and helicopters. Plaintiff estimates that her detention has continued for more than 9165 days that she is aware of but believes that it has continued longer.


## Count 2: Torture

**Complaint for use of lethal force during unlawful non custodial detention and unlawful seizure of the person of the plaintiff, from the unlawful intrusive surveillance activities of the United States government and their agents,  in violation of the plaintiff's Fourth Amendment rights.**

35.   Plaintiff incorporates statements # 1 to 34.

36.   The plaintiff alleges that she is assaulted by remote surveillance guided weaponry that uses advanced technology to physically and silently assault her person.

37.   Plaintiff  believes that the weaponry is microwave weaponry of a type that is described online by the U.S. Air Force which is called Directed Energy and is a technology that targets

heat to impact the human body and is becoming more common knowledge currently on the internet and in print media.

38.   Plaintiff alleges that the attacks on her person could not happen were her person not illegally seized under government surveillance in violation of her Fourth Amendment rights.

39.   Plaintiff alleges that her life is in danger from the routine attacks which are routine torture in reprisal against her assertions of rights, claims for relief, and resistance that the plaintiff  thinks or expresses, and are threats in the form of torture that the United States agents make against the plaintiff concerning the extraordinary and outrageous circumstances under which she lives, her interpretation of events, and her conscientious identity as a secular, bisexual, pacifist, civilian female U.S. citizen.

40.   Plaintiff  alleges, that in mid to late 1997 that she began to be attacked daily by technological surveillance guided assault on various parts of her body which she alleges was reprisal against legal claims that she was filing at that time in Athens County Common Pleas Court, Athens, County, Ohio concerning the custody of her two youngest children.

41.   Plaintiff alleges however that the assaults on her person have continued daily since that time but can be more numerous and painful when she is preparing legal claims. For example, plaintiff alleges during the preparation  of this complaint she has suffered increased assault of her person, particularly near her right shoulder blade and that she experiences daily pain which is often aggravated by further assault of her shoulder blade area causing inflammation and pain.

42.   Plaintiff alleges that the US agents deliberately keep the attacks at a low level so that there is rarely an obvious evidence of assault but that she has experienced light bleeding and bruising, temporary knee pain requiring crutches, a dislocated hip, aggravated back pain; some degree of daily pain, mild to intense, as a result of the assaults.

9

43.   Plaintiff alleges that the assaults target all parts of her body including face, back, legs, arms, breasts, genitals, head, ears, eyes, anus, sinuses, knuckles, a prominent mole on her foot,  and have occurred indoors and outside, in moving vehicles, basements,  and nearly anywhere. She was attacked once in a clearing after emerging from a hiking trail in deep woods which suggests that the weapon was deployed by aircraft or a satellite.

44.   Plaintiff alleges that assaults of her genitals and  her right shoulder blade area of her back are the most numerous and that she is assaulted  in those areas by depraved U.S. agents every day causing her pain, sleeplessness, and disruption of her legal claims preparation which plaintiff alleges is the point of the increased violence which violates not only her U.S. Constitution Fourth Amendment rights but also her rights to due process and the equal protection of laws and demonstrates conspiracy to interfere with her bringing of legal claims.

45.   In the week following the 9/11/01 attacks the plaintiff began to be tortured in her hands which was characterized by being  awakened from sleep by extreme  pains in both her hands particularly the knuckles. Plaintiff alleges the torture of her hands was torture of plaintiff concerning her very critical thoughts about all fundamentalist religions in the days and weeks following 9-11-01.

### Count 3: Involuntary Servitude

**Complaint for violation of plaintiff's U.S. Constitution Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights from being the involuntary non-consensual subject of mind reading technology which searches the content of the plaintiff's thinking making her a real slave to the  illegal, intrusive mind reading technology of the U.S. government surveillance activities. Plaintiff is not free to leave her enslaved status and is subjected to violence against her person daily. Plaintiff further claims violation of her right to bodily integrity in mind reading and surveillance of her thinking processes by enhanced surveillance technology.**

46.   Plaintiff incorporates statements  #1 to # 45.

47.   Plaintiff alleges that the mind reading illegal search of the plaintiff's thinking processes, which plaintiff knows of from harassment by U.S. agents  who remotely surveil the plaintiff's whereabouts, activities, conversations, and thinking content has been going on since at least 1992 that the plaintiff knows of personally. But plaintiff believes that it has been going on longer, possibly since the late 1970s.

48.  Plaintiff alleges that she believes that that she is the subject/victim of illegal human experimentation in brain processes and mind reading in numerous incidents and events via remote advanced technology surveillance being conducted by the United States Government.

49.   Plaintiff alleges that  numerous incidents involving interrogation, harassment, and electronic assault by remote U.S.  agents have convinced plaintiff that she is a victim of not only unlawful search and seizure in mind reading, but that she is the subject of  unlawful human experimentation which she suspects is being used to develop interrogation procedures and methods of mind control.

50.  Therefore,  the plaintiff alleges that she is being subjected to involuntary servitude in the use of mind reading and other brain process and bodily function interference and surveillance in violation of her U.S. Constitution Thirteenth Amendment rights.

51.  For example, plaintiff asserts that she began to experience intermittent spasmodic breathing incidents which caused her to gasp beginning around 1989. The incidents continued for many years.  She believes herself to be subjected to brainwave interference by high tech remote surveillance causing various physiological phenomena including temporary numbing of her facial nerves on one side of her face, coughing, gasping, sneezing, and interrupted thinking.

52 a.  Plaintiff alleges that the mindreading is commonly known of locally and that the following harassing incident refers to mind reading. On 12-20-08 near 7:00am she went into a Speedway

11

gas station convenience store on E. State St. in Athens. A male at the counter who appeared to be a customer said: **"Do you have any brain cells left?"** which plaintiff alleges was a reference to the fact that she is illegally searched by the U.S. Government using mind reading technology.

52 b.   Plaintiff alleges that on 1-24-09 she was leaving the Athens County Courthouse, where she sometimes uses the law library when an unknown male walking past her said **" They looked at your brain."** Plaintiff alleges that the male made the comment in close proximity to the courthouse security scanner to inform the plaintiff about mind reading. Plaintiff alleges that the incident refers to mind reading and that Athens County is also guilty in using mind reading illegal search and seizure.

53.   Plaintiff alleges that in 1999 an Athens County Sheriff's deputy bragged to the plaintiff that mind reading would be useful for interrogating prisoners. (See # 205 ) . For example, the plaintiff alleges that she has been subjected to countless incidents of interference in her intestinal processes resulting in nausea, stomach cramps,  and gas.

54.   Plaintiff alleges that she has been subjected to thousands of incidents of harassment about the presumed content of her thinking.

55.   Plaintiff alleges that she has been subjected to experimentation in electronic suggestion which is attempted mind control by suggestion of content. The suggestion has been both real persons using language and symbols and electronic intrusion in her brain waves.

56. Plaintiff alleges a conspiracy to keep plaintiff in the dark about mind intrusion and mind reading and alleges that government intentions to avoid accountability about mind reading have driven these events through many years.

## Count 4
**Invasion and Deprivation of Privacy in violation of the plaintiff's Fourth and Ninth Amendment rights.**

57. Plaintiff incorporates statements # 1 to #56.

58. As a result of the unlawful arrest of her person, the plaintiff has been subjected to a kind of parading and public exposure of herself as a hostage and searched subject and is the butt of ridicule and contempt by some people she encounters in public because the U.S. agents have made her an example and political object of derision. For example, people will meet, stop and chat near plaintiff asking "How's it going. Living the dream?"

59. Plaintiff alleges that defendants have illegally searched and shared information in not only her phone conversations and e-mails and other correspondence, but in her personal activities, the content of her thinking, the substance of her legal claims, and all facts of her personal life.

60. Plaintiff alleges that all defendants have had access to the stolen personal information generated by the illegal search and seizure of her person being conducted by the United States Departments of Defense and Justice and disseminated unlawfully as stolen personal property to other defendants and their agents.

61. Plaintiff alleges that she enjoys no privacy in her personal life whatsoever. Her family life is illegally searched whenever plaintiff is with her children and grandchildren. Plaintiff enjoys no intimate life. The content of her mail is searched and disseminated. All her personal facts have been unlawfully disseminated.

62. The plaintiff enjoys no privacy whatsoever in her thinking and bodily functions, conversations and utterances, whereabouts and actions.

63. Plaintiff has been subjected to innumerable incidents of telephone harassment.

13

64 a. Plaintiff alleges that defendents have violated her rights by constitutional tort, depriving her of seclusion by their intrusive surveillance activities.

   b. Although conspiracies are by their nature secretive, and plaintiff has not been told any facts; the plaintiff alleges that her identity has been depicted in a false light as if she is acting in concert with other person(s), that she submits to being medicalized and an infant/incompetent in the legal meaning of the words, or that her cause is mostly about defamatory smears suggesting unchasteness.

   c.   Plaintiff alleges that because she is, in essence, a political prisoner being subjected to intrusion, unlawful arrest, and assault by new and very dangerous technologies, that she has been defamed by unreasonable publicity that seeks to hide the reality of her circumstances while she is suggested to be an unchaste woman not deserving of empathy, sympathy, or even rights. Further, unreasonable publicity about her identity has implicated her identity and that of her children in infamous crime in the terrorist attacks of 9/11/01 (See # 161).

   d.   Further, the plaintiff has been lead to believe by public suggestion that others, such as her sister or her son, or her ex-husband or various others including religious organizations have unlawfully appropriated her identity.

## Count 5

## Conspiracy

65.   Plaintiff incorporates the foregoing statements # 1- # 64.

66.   The plaintiff alleges a civil rights conspiracy on the parts of the various defendants because they have engaged in actions to intrude upon the plaintiff, illegally search the plaintiff using electronic and other remote surveillance technologies, harass, oppress, cause the plaintiff harm, and further the government's illegal and unofficial policy of continuous illegal search and

seizure, unlawful arrest, and deprivation of the privacy of the plaintiff for the purpose of cover-up of illegal detention by surveillance, illegal human experimentation and involuntary servitude in violation of plaintiff's rights under the First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendments of the United States Constitution. Plaintiff brings conspiracy claims under 42 U.S.C.S. sec. 1985 & 1986.

67.   Plaintiff alleges that all defendants are parties to a conspiracy that furthers the deprivation of the plaintiff's constitutional rights though she is not alleging that all defendants are in communication with each other, only that their separate actions further the conspiracy to deprive the plaintiff's rights, and that they are cognizant that the plaintiff's rights are being deprived,

68.   Plaintiff alleges that all the defendants know that the plaintiff is unlawfully searched and seized in violation of her U.S. Constitution Fourth Amendment rights, that she is an unlawfully detained illegal search subject under the unlawful watch of government and media, and that she is unlawfully deprived of privacy at all times.

69.   Plaintiff alleges that all defendants are privy to a network, the precise locus of which is unknown to the plaintiff but which she assumes to be the Pentagon and /or the Justice Department, the news media, or a religious organization, which disperses information about the plaintiff daily, her plans, utterances, location and other personal information which could only be known from illegal search of the plaintiff; her conversations, utterances, whereabouts, activities and thinking.

70.   Plaintiff alleges that as a public hostage many persons, unknown to plaintiff, know the plaintiff by sight and have been recipient to some information concerning the plaintiff, have formed opinions about the plaintiff, and have indicated neutrality, acceptance, dislike, contempt, anger, and other responses toward the plaintiff by public commentary and body language.

15

Thus, anytime the plaintiff goes in public she could be subjected to public abuse of some form or another including comments, gestures, stalking, and police shows of authority in violation of her rights to freedom from illegal search and seizure and her right as a U.S. citizen to use public spaces without being oppressed, as guaranteed by the privileges and immunities clause of the U.S. Constitution Fourteenth Amendment.

71. Plaintiff alleges that all defendants are aware of if not privy to the conspiratorial network that bullies and intimidates the plaintiff and attempts to suppress plaintiff's speech and activity by use of ubiquitous government listening, watch, and mind reading surveillance.

72. Plaintiff further alleges that the conspiratorial network also renders the plaintiff vulnerable to stalking by persons who have a religious or political agenda, who may attempt to ridicule plaintiff, harass the plaintiff, unlawfully use her identity, or interfere with her in some other way such as interfere with her economic rights to go to work or further the conspiracy to misrepresent the plaintiff's identity.

73. Plaintiff alleges that the most common daily element of the conspiracy, which has continued for the past twenty –five years is silence, which is characterized by many people knowing that plaintiff is illegally searched and privacy deprived, express knowledge often by following, stalking, and public commentary, but offer no information to help the plaintiff and do not respond to the plaintiff's assertions of the facts other than by silence.

74. Plaintiff alleges another common element of the conspiracy is that no information is ever volunteered to plaintiff in the interest of plaintiff winning her freedom in court. She speculates that is so because the "uninvited ear" is ubiquitous. Never the less, it remains a fact that plaintiff is simultaneously harassed about her status and offered no help in remedying the situation.

75. Plaintiff alleges another common element of the conspiracy has been phones ringing when plaintiff enters her home or another room or building. Often when plaintiff puts her key in her door at her home, the phone of the landlady who lives upstairs will start ringing. This element of the conspiracy has lessened since this aspect of the complaint has been set forth.

76. Plaintiff alleges that identity fraud is a characteristic element of the conspiracy and that the plaintiff has been harassed by many people who suggest that the plaintiff is acting in concert with other persons in her quest for freedom.

77. For example a common suggestion has been that plaintiff is actually the same as or "like" her sister who lives in New York state. It implies that plaintiff is from somewhere else, is complicit in the surveillance of her person, home, papers and effects and a co-operant with law enforcement and the military in the deprivation of her own rights. It also suggests that plaintiff is associated with the surveillance of other people which has never been true.

78. Plaintiff states that she moved away from Athens County to her sister's apartment in N.Y. State for close to eight months in 1989 and early 1990 (July 1989 – March 1990) because she was unemployed in Athens County, being unlawfully searched in her home, whereabouts, activities and conversations and did not have financial resources to remain in her home.

79. Plaintiff states that at the time, (1989) she did not know that she was being subjected to a mind reading search and did not discover mind reading until 1992.

80. Plaintiff alleges a that mind reading conspiracy was occurring in 1989 and that covering up mind reading and keeping the knowledge of it from the plaintiff was occurring when plaintiff was forced by loss of income and illegal search and seizure to move away from Athens County where she had been forced by office shunning and a hostile work environment to become unemployed.

17

81. Plaintiff alleges that over the course of many years she has been harassed by suggestion of her sister's name, vehicle, and identity and that she believes those elements point to an identity fraud conspiracy although she has never acted in concert with her sister nor has she been complicit with the unlawful deprivation of her own privacy, the illegal search and seizure of her person, home, papers and effects in violation of her constitutional rights. Plaintiff does not communicate with her sister.

82. Plaintiff alleges that after she moved back to Ohio in March 1990, that she became the target of more hostile actions by the police which she alleges were because she was not acting in concert with her sister, had never been, and that the police were involved in a conspiracy to thwart any Fourth Amendment claims she might bring because of their own guilt which had caused great harm to plaintiff's family life and parenting rights.

83. Plaintiff alleges that she has been stalked by members of the Mormon Church and that she has reason to believe that members of the Mormon Church were told of her identity by the U.S. government and have stalked plaintiff because she is, a mind reading hostage, bisexual, thought to be unchaste, politically liberal, and that they are guilty of searching the plaintiff . (See Count 14).

84. Plaintiff alleges that another theme of the identity fraud conspiracy associates the plaintiff's identity with that of her previous husband from whom she has been divorced for nearly twenty five years and who she took to court twice in 1988 and 1997 concerning divorce and child custody issues. Plaintiff does not associate with her former spouse.

85. Plaintiff alleges that another attack on her identity as a illegally searched and seized divorced, bisexual, pacifist, woman suggests that plaintiff is a child or an infant /incompetent in

the legal sense of the word. These ideas are suggested by harassment and acting out in public by local persons often carrying an infant female child.

86. Plaintiff alleges that a further recurrent identity attack theme suggests that plaintiff is/was an unchaste woman and that these extraordinary circumstances arose from actions of the plaintiff rather than from the unconstitutional search, seizure, and privacy invasion perpetrated by government, media, and their agents. This identity attack theme suggests and "explains" that plaintiff is not free because she is an unchaste woman and suggests that she is not an individual in bringing her claims.

86. Plaintiff alleges that the following incident is an example of the suggestion of unchasteness. She states alleges that she was on line at her bank, the Ohio University Credit Union, in December 2008 when a cell phone rang several customers behind her. Plaintiff heard her name mentioned, "Ellyn". When she had finished her transaction and passed the male who had spoken, he said, "I'm mated." Plaintiff alleges the comment suggested unchastidy and the idea of a partnered or married male and that plaintiff was calling a married male.

87. Those kinds of comments continue indefinitely and are likely to be repeated if plaintiff alleges in writing that she is offended by them because everything that the plaintiff writes is illegally searched and reported. It is a means of attempting to silence the plaintiff.

88. Plaintiff alleges that her complaint writing, notes writing, and all correspondence is illegally searched and stolen information that is unlawfully disseminated to persons who sometimes use it as the basis of further stalking, ridicule, and attack.

89. Plaintiff alleges that she has never represented herself in her conscientious identity and claims as an unchaste woman or as the partner of any male or female or as anybody's date. She is not married or partnered with anybody. She has been divorced since 1988 and does not even

19

enjoy an intimate life because of her second class status as a government search subject totally and illegally deprived of privacy at all times. She asserts that sexist attacks on her identity are an attempt to smear her and change the subject from the underlying cause of all plaintiff's action and basis of all plaintiff's complaints which is illegal search and seizure and involuntary servitude as a mind reading hostage of government.  She asserts that her conscientious identity has always been that of a civilian, pacifist, and bisexual woman.

90.  Plaintiff alleges that another aspect of the identity fraud conspiracy and identity attack suggests that plaintiff is or has been a willing police or military accomplice, that she bears arms and surveillance bugs, and is in fact the party in the wrong.

91.  Plaintiff alleges that she believes that because she had a cousin who was a career officer in the U.S. Navy, that a conspiracy existed to suggest that she was associated with the military.

92.  Plaintiff alleges that she has never been associated with the police or military, does not and never has acted as an agent for government, religion or business in the context of these claims, has never borne arms or bugs, and that she has always been a civilian. She alleges that all forms of the identity fraud conspiracy attack her identity as an individual bisexual woman and mind reading hostage and that the identity fraud conspiracy in all its guises is intended to cast doubt upon plaintiff's credibility and is inherently homophobic because it promotes the plaintiff's image as an unchaste hetero sexual woman while continuing silence and violence against the plaintiff, a bisexual woman.

93.  Plaintiff alleges that she was accosted on the street in Albany, OH (Athens County) by a woman saying, "Barbara, are you Barbara?" (1997). Plaintiff of course said that she was not Barbara, (which is the name of several persons including her ex-spouse's current wife.)

20

94.  Another time, also in Albany, OH, a community where plaintiff lived for nearly twenty years, a post office worker said from behind the mail boxes at the post office, "Now you're Evan." (1997).Evan is the name of plaintiff's son.  The comment indicated cognizance of an identity fraud conspiracy.

95.  Another time more recently (2012) plaintiff was asked if she was "Aileen", which is the name of her sister in New York.

96.  Plaintiff states that she offers these examples to show the ongoing nature of the conspiracy but that the evidence is not confined to these examples.

97.  Plaintiff has entered stores and the PA system would immediately ask for a"Debbie" ( ostensibly a store worker). Plaintiff asserts that while the store may not have known that a caller was phone-stalking and harassing the plaintiff, that plaintiff was harassed many times that way in various stores over the year about various persons whose first name plaintiff may have recognized as someone she was being harassed about.

98.  Plaintiff asserts that harassment about a "Debbie" refers to January 4, 1991 when plaintiff was taken to the Athens Mental Health Center, (now a different facility called Appalachian Behavioral Healthcare) by the Athens County Sheriff's Department and a woman named Debbie S. was present with the Athens County Sheriff Department.

99.  Plaintiff alleges that the  conspiracy itself appears to be ubiquitous and that prompts for mind reading interrogation are also a possibility since plaintiff has been subjected to intense commentary and scrutiny for many years and is under government surveillance moment to moment where ever she is. Plaintiff has many times been harassed about the Debbie S. in question and is certain that it is a mind reading interrogation.

100.  Plaintiff does not allege that defendants necessarily communicated amongst themselves to accomplish the conspiracy, only that all had knowledge of a conspiracy to violate the plaintiff's rights and that all acted upon that knowledge to further the conspiracy against the plaintiff's freedom.

101.  Plaintiff alleges that a conspiracy to depict the plaintiff as mentally incompetent or an agent for the handicapped community or mental health community has been promoted by the Athens, OH community.

102.  Plaintiff alleges that incarceration in the Athens Mental Health Center for two commitments in 1991 and 1992 and the ongoing illegal search and seizure and deprivation of privacy have caused the plaintiff to be viewed through a continuous lens of "unwellness" in violation of her rights.

103.  Further, plaintiff was encouraged to apply for SSI in 1994 by a state ( State of Ohio) mental health worker because plaintiff was homeless at the time. But honesty about the plaintiff's circumstances of illegal search and seizure was avoided and ignored. She was not helped to find employment. She was helped to be sterotyped as an unwell and incompetent person in an environment where she was deprived of privacy at all times.

104. On August 9, 1995 Officer Gura of Athens Ohio Police Department made plaintiff park in a handicapped parking space on the street in Athens, OH prior to taking her to Municipal Court, although it was not necessary that she park there. His demand shows that the plaintiff's identity was being depicted as an incompetent, or that he wanted her depicted as a handicapped person, or that he believed that she was illegally representing herself as a handicapped person, when in fact, illegal search and seizure and corrupt police activity was the root of the problem.

**Failure to Prevent or Stop a Conspiracy**

105.   Further,  the plaintiff  alleges that the defendants have failed to stop a civil rights

conspiracy; which is failure to take action on behalf of the plaintiff's constitutional rights, a

failure that  has resulted in further harm to the plaintiff.  Plaintiff alleges that silence about the

plaintiff's status and need for fundamental rights to freedom from illegal search and seizure is a

characteristic of the conspiracy in which each individual defendant participated.

106.   Plaintiff alleges that all defendants knew of the unlawful deprivation of the plaintiff's

rights and that their actions furthered the conspiracy to harm and further enslave the plaintiff.

**Invidiously Discriminatory Animus**

107.   Plaintiff alleges that government has always acted from an invidiously discriminatory

animus of homophobia and bias in favor of religious organizations who have acted as their

agents and who the government has allowed unlawful access to the details of the plaintiff's

personal information.

108.   Plaintiff alleges that the media defendants furthered the conspiracy against the plaintiff by

their silence and failure to take action to prevent a conspiracy.


**Count 6**
**Complaint Against the Department of Justice,**
**The Federal Bureau of Investigation, Attorney General Eric Holder, and FBI Director**
**Robert Mueller**

109.   Plaintiff incorporates statements # 1 to # 108.

110.   Plaintiff alleges that the Department of Justice has been fully aware of the unlawful search

and seizure of the plaintiff for many years and at least since 1988 or before.  Plaintiff  wrote to

Attorney General Meese in 1988 asserting her U.S. Constitution Fourth Amendment rights and

complaining that her rights were being violated, that she was being subjected to electronic surveillance, intrusion, privacy invasion, and unlawful search and seizure.

111.   Plaintiff alleges that in October 1988, while she was writing the letter mentioned above, an Athens County Sheriff deputy named "Carl" arrived in front of her home in Albany, OH and remained sitting in his car  there while she wrote the letter to Attorney General Meese, in her home, at the time, on Clinton St. in Albany, Ohio.

112.   Plaintiff alleges that she remembers going into a public building in Southern Ohio in 1990 and reading a poster which quoted the U.S. Attorney General Thornburg. Upon reading the poster the overhead lights in the building dimmed momentarily, which plaintiff alleges has occurred innumerable times both indoors and out in many places and is characteristic of  the unlawful search of which she complains.

 113.   Plaintiff alleges that she has been harassed by lights dimming in federal buildings elsewhere, such as in November,1999 when she filed suit at  the Joseph P. Kinneary U.S. Courthouse in Columbus, Ohio and the lights dimmed momentarily as she was leaving the Clerk of Court's office to get on the elevator. The FBI is also housed in that building.

114.   Plaintiff alleges that in March 2003, she filed suit against AT&T at the same federal courthouse in Columbus, and the  hard copy of her complaint disappeared from the courthouse. It was not acted upon and plaintiff was forced to refile the same complaint some weeks later.

115.   Therefore plaintiff alleges that the FBI criminally interfered with plaintiff filing her complaint against AT&T in March 2003.

116.   Plaintiff alleges that many times in her various homes through the years momentary light dimming has occurred suggesting the FBI. Many times during the course of the past twenty four years plaintiff has experienced momentary electric light dimming in public buildings and in

24

private spaces, such as a federal courthouse, her own home or other homes, sometimes following her speech, which has lead her to believe that she is being tracked by the Department of Justice who conspire with electric utilities, and that they use a tactic of momentary dimming of electric lights as a means of intimidating her, repressing her speech, and making her continually aware that she is being tracked and watched, and listened to by pervasive ubiquitous government surveillance.

117. Plaintiff states that she had filed suit against the CIA in 2004 which was subsequently dismissed by the district court in Washington, D.C. The court found that the claims were not proven. However, during those proceedings the CIA claimed that the FBI was the responsible party regarding the surveillance of the plaintiff.

**Count 7**
**Complaint Against The Department of Defense, Defense Secretarys Chuck Hagel, Leon Panetta ,Central Intelligence Agency, and CIA Directors Leon Panetta and John Brennan**

118. Plaintiff incorporates foregoing statements # 1 to # 117.

119. Plaintiff alleges that she has been under the unlawful surveillance of the U.S. military since the 1980s at least and that at the time she only knew that military fighter jets routinely flew over her house where she then lived in rural Athens County, OH.

120. Plaintiff states that in the 1980s a National Guard unit used property across the road from her rural home for a camping weekend.

121. In January, 1991, plaintiff witnessed some kind of military incident in the night sky over rural Athens County Ohio. There were flashes in the sky. There was a tremendous air shock which nearly knocked the plaintiff over although she was indoors at the time. Following that, some fallout material settled on the ground. The air had an extremely acrid and unfamiliar odor

25

and was very still and eerily windless. She believes that it was some kind of experimental

nuclear incident perpetrated by the military.

122.   Plaintiff alleges that even months later, glowing raindrops could be seen on the ground in

the area after a rain.

123.   Plaintiff was subsequently, that very day, January 4, 1991, admitted to the Athens Mental

Health Center at the ostensible behest of her ex – spouse Mr. P. Webb, (of Athens County, OH)

and the then Athens County Sheriff, John Hicks.

124.   Plaintiff had witnessed the air shock and subsequent radiation incident from a house in

rural Athens County where the plaintiff's four children (ages 10 - 18 ) lived with her ex-spouse.

Plaintiff was a co-owner of the house at the time and an invited guest, visiting her children. The

plaintiff's ex-spouse and children had been sleeping during the air shock incident.

125.   When plaintiff subsequently complained about what she had seen to her ex-spouse she

expressed the opinion that her children should not attend school that day.  Plaintiff quarreled

with her ex-spouse and her description of the events was used as an excuse for calling the Athens

County Sheriff and a reason for committing the plaintiff to the Athens Mental Health Center.

126.   Although the plaintiff's ex-spouse was involved in seeking  the mental health

commitment, he also suggested that he believed plaintiff's account and suggested that plaintiff

call her sister in New York to see if her sister was all right.

127.   Plaintiff was not close to  her sister but was inclined to appease her ex-spouse and call her

sister for reasons of acting reasonably because she was very frightened by the circumstances.

128.   Plaintiff alleges, however, that she now believes that the conspiracy to associate the

plaintiff with her sister was either originated or bolstered by that phone call she made on the

morning of January 4, 1991 in rural Athens County, OH.

26

129.   Plaintiff alleges that the commitment was accomplished by the Athens County Sheriff,

Hicks. The Athens County Sheriff's Department was already illegally searching the plaintiff. The

commitment had the effect of permanently terminating the operation of plaintiff's parenting

rights, a property interest grounded in state law.

130.   Plaintiff alleges however that both the plaintiff's ex-spouse, Mr. Webb, and Sheriff Hicks

acted as U.S. agents and plaintiff's credibility as a witness to the extraordinary military event

was attacked in committing the plaintiff and was the immediate object and end purpose for the

commitment.

131.   The Athens County Sheriff had brought with him that morning a mental health counselor

( Ms. Joanne G.), who plaintiff did not know,  and a social worker (Ms. Debbie S.).

132.    Plaintiff alleges that she was slightly acquainted with Ms. S. previously and that Ms. S.

was an associate of the plaintiff's ex-spouse where he served on the board of her agency.

133.    Plaintiff states that she has been harassed and abused innumerable times by references to

Ms. S., in stores and amongst passersby, and that U.S. agents have used a voice facsimile of Ms.

S's voice to harass the plaintiff, over a period of many years.

134.   Plaintiff asserts that  not on January 4, 1991 nor on any other day for that matter, was she

ever armed or threatening violence. Nor was she a harm to herself or others and that no grounds

for commitment existed  for detention from the behavior that she exhibited. She asserts that she

had always been a pacifist and did not bear arms.

135.   Further plaintiff alleges that she believes that she was made a scapegoat for the actions of

the military possibly because of her cousin in the Navy a kind of guilt by association hysteria

was promoted, and likely because the plaintiff's case was clearly against the military U.S. agents

wanted the plaintiff's identity smeared.

136.   Plaintiff states that she was forty one years old in January 1991. She states that prior to

being committed to the Athens Mental Health Center on the morning immediately following her

seeing what was a military incident involving a tremendous air shock and fallout material,  she

had never been treated for or hospitalized for mental illness, had not taken medication or gone to

counseling, and had enjoyed good health throughout her adult life and during her seventeen year

marriage 1971-1988.

137.   Plaintiff alleges that the Athens County Sheriff was acting as an agent for the United

States and because of what she witnessed, and because the United States was already illegally

searching plaintiff including reading plaintiff's mind,  that incarcerating her in the Athens Mental

Health Center was a means of attacking the plaintiff's story as to what the facts were and are

because the Athens County Sheriff's Department was not an innocent bystander to the illegal

search and seizure of the plaintiff. They actively participated in the deprivation of the plaintiff's

constitutional rights and cover up of mind reading.

138.   Plaintiff  alleges that she believes the commitment  was also reprisal for attempting to sue

Athens County, OH.

139.   Plaintiff had visited many attorneys during 1990 attempting to file suit against Athens

County and the U.S. government who were and are responsible for the illegal search and seizure

in violation of her U.S. Constitution Fourth Amendment rights and which wrongdoing had

resulted in plaintiff being denied due process and equal protection during her divorce

proceedings in 1988.  The Athens County Sheriff facilitated plaintiff's commitment by driving

the plaintiff to the mental hospital in his car on January 4, 1991.

140.   Plaintiff states that the attorney for the Athens Mental Health Center in January 1991 was

Ms. Susan Gwinn, of Athens, OH who facilitated the plaintiff's ninety day commitment to the

28

hospital. Plaintiff still owed Ms. Gwinn $1002.00 from 1988 which she had not paid because plaintiff had fired Ms. Gwinn as her divorce attorney in 1988 after Ms. Gwinn lost the temporary custody of the plaintiff's four minor children.

141.   Therefore,  the plaintiff alleges that her commitment to the Athens Mental Health center in January, 1991 was unethical and in violation of the plaintiff's rights to due process and the equal protection of the law because Attorney Gwinn could not be impartial where an outstanding  debt of  $ 1002.00 was owed to Attorney Gwinn by the plaintiff.

142.   At the Athens Mental Health Center, on January 4, 1991, the day plaintiff was committed, plaintiff experienced extreme nausea and a nose bleed which she speculates was from being exposed to radiation in the air.

143.   Plaintiff suffered a cataract diagnosed the next year in 1992 which is known to be a common occurrence resulting from  exposure to radioactive dust. Her physician noted that given her young age it was unusual and speculated as to the accident which caused it.

144.   Plaintiff was made to speak to a panel of  health professionals at the Athens Mental Health Center several days later concerning what she had witnessed in the early hours of January 4, 1991. She was asked various questions about what she had seen and what her impressions were.

145.   Plaintiff alleges that the three month commitment in the Athens Mental Health Center in January 1991 and a subsequent three month commitment in November 1991 were an Athens County, State of Ohio, and U.S. Department of Defense conspiracy to label the plaintiff as unwell and not credible because of what she had seen and because of the already existing liability of government in continuing an unlawful search and seizure using mind reading.

146. Plaintiff alleges that in 1999, when she looked at some of her Athens Mental Health Center records from January 1991, they contained some false information concerning the circumstances of January 4, 1991.

147. Plaintiff alleges that most notable of the false information in her mental health record are statements that plaintiff was armed on the morning of January 4, 1991 and possessed a gun.

148. Plaintiff asserts that she does not ever exercise her U.S. Constitution Second Amendment rights and that on January 4, 1991, she was not armed and has never been armed, does not ever carry weapons, and is a pacifist and opposed to the use of violence and arms in any context.

149. Plaintiff alleges that the State of Ohio deliberately falsified her records regarding her involuntary commitments, facilitated by the Athens County Sheriff by force and threat of force, at the Athens Mental Health Center beginning in January 1991, and November, 1991.

150. In June 1992, the plaintiff discovered that she was being subjected to illegal search of her thinking content from mind reading technology being conducted by government agents staking her out, which she discovered from being harassed by government agents about the content of her thoughts.

151. Plaintiff alleges that she believes that the mind reading which she discovered in 1992 was known of at the time of her divorce in 1988 which is also when plaintiff discovered illegal search and seizure.

152. Plaintiff alleges that she believes that the mind reading illegal search of plaintiff's brain and thinking content had begun and continued for some time before 1988, unbeknownst to the plaintiff.

153.   Plaintiff alleges that co-conspirators in Athens County, in the police and Sheriff departments and elsewhere, knew of the mind reading search of the plaintiff because they were acting as agents for the Department of Defense.

154.   Plaintiff alleges that in 1991 she was surprised to see a U. S. military stealth bomber, a frightening and unmistakable aircraft,  rather low in the sky and overhead over Alexander Township in Athens County, OH when she was working outdoors.

155.   Plaintiff alleges that there have been numerous occasions of military aircraft flying low over the plaintiff both in Ohio and elsewhere.

156.   Plaintiff alleges that in March, 1999 the plaintiff was riding in a vehicle on Rt. 50 W west of Athens when a single small U.S. military fighter jet crossed the road directly in front of the car she was riding in flying quite low to the ground.

157.   Plaintiff alleges that when she was visiting South Africa on an educational trip in July 2011, a group of five military aircraft flew low over the road where plaintiff was riding in a vehicle. The military aircraft landed at a nearby South African Air Force Base. It was reported in the local newspaper (*The Herald*, Port Elizabeth, SA 7-19-11) that U.S. Marines were on joint maneuvers with the South African military.

158.   Plaintiff alleges that the group of five airplanes were stalking her deliberately to display a show of authority.

159.   On September 7, 2012,  plaintiff was a pedestrian, walking on North in College Street, Athens, OH, ( next to a construction fence), at about 2:15pm, when a car carrying two males in U.S. Marine uniforms drove crazily straight towards plaintiff threatening to run plaintiff over, then swerved to avoid hitting the plaintiff. They then made a U turn and  parked their car [U.S. Government plates 13 O373M ] on College Street, Athens, OH.

31

160.   Plaintiff alleges the Marine's driving and swerving were a deliberate and intentional attempt to intimidate the plaintiff because she was at the time in the process of preparing these claims for her rights and demands for relief.

161.   Plaintiff alleges that the DoD and CIA are responsible for the fact that Muhammad Atta, a 9/11 hijacker who flew an American Airlines plane into the World Trade Center North Tower, knew of the plaintiff's identity because she is a mind reading hostage and that Atta's trip to Maine the two days before  the 9/11/01 terrorist attacks was intended to criminalize the plaintiff's identity. The 9/11 Commission reported that it did not know why Atta travelled to Maine immediately prior to 9/11/01 before boarding a plane in Portland ME that morning. Plaintiff had travelled to Maine three weeks earlier and  had visited with a friend and dined out. Atta was photographed in Portland ME the day before the attacks eating with friends, fellow terrorists. Plaintiff alleges that the DoD and the CIA are parties to a conspiracy to implicate the identity of the plaintiff in the terrorist events of 9-11-01.

162.   Plaintiff asserts that she has suffered horrendous grief and despair since the 9/11 disaster because of the illegal search perpetrated by the DoD and  the CIA in violation of plaintiff's Fourth Amendment rights. It is her belief that the 9/11 disaster ensnared her identity ( and that of her twin daughters) in an outrageous and *infamous crime* within the meaning of the Fifth Amendment and in violation of her rights to due process and the equal protection of law.

163.   Plaintiff states that she had filed an appeal for custody of her twin daughters a second time on September 11, 1997 in the Ohio Fourth Circuit Court of Appeals, Athens County.  The 9/11 World Trade Center Attacks occurred four years to the day later and criminally implicated plaintiff's identity because of her notoriety as a mind reading hostage. Plaintiff is bisexual. What ever else was reported about the plaintiff, she can only speculate.

164. Plaintiff states that members of the Taliban, terrorist group, were photographed in Islamabad on September 17, 2001, Constitution Day, holding a banner that said: "America, Think Why You Are Hated" which plaintiff alleges refers to mind reading.

165.  Plaintiff states that she visited the  World Trade Center on July 4, 1986 with her four children. She was attending the reopening of the Statue of Liberty. She believes that she was already being subjected to illegal search and seizure and a mind reading search at the time although she did not suspect it.


### Count 8
### Complaint Against Athens County, Ohio: Sheriff Kelly and the Athens County Sheriff Department, the Athens County Common Pleas Court and other unnamed agents of Athens County.

166. Plaintiff incorporates the forgoing statements #1 - #165.

167.  Plaintiff alleges that she has suffered injury to her rights, person, and property, irreparable harm, and loss as a result of the unlawful actions of the Athens County Sheriff's Department, the Common Pleas Court,  and other unknown agents for Athens County, Ohio beginning in 1988 or earlier and continuing until the present day, a span of twenty five years.She alleges that the unlawful actions of the Athens County Sheriff's Department include illegal search and seizure in violation of the plaintiff's U.S. Constitution Fourth Amendment rights, furtherance of a conspiracy to violate the plaintiff's rights, actionable under 42 U.S.C. sec. 1985, failure to take action to prevent a civil rights conspiracy actionable under 42 U.S.C. sec. 1986,  and violation of plaintiff's rights to due process and the equal protection of laws under the U.S. Constitution Fourteenth Amendment.

168. Plaintiff alleges that the Athens County Common Pleas Court violated her rights to due process and equal protection by failing to acknowledge the illegal search and seizure of the plaintiff and conspiracy during domestic proceedings in 1988 and 1997, and during an auto accident personal injury case 1998 – 2001. For example, plaintiff was not able to find counsel to assist her in her claims in those cases after initial counsel acted unprofessionally which she alleges was the result of a conspiracy to violate the plaintiff's rights of which the court was aware. Plaintiff's loss of custody of her four minor children in 1988 was a direct result of her illegally searched and hostage circumstances. A fair playing field would have yielded a different result.

169. Plaintiff alleges that she has reason to believe that Athens County also violated her First Amendment rights to freedom of personal expression, in that her actions were and are always being interpreted in light of her political circumstances which has had the effect of chilling her speech and expressive activity.

170. For example, the plaintiff found that she had to avoid wearing the color royal blue because it would cause her further harassment as if an unchaste woman.

171. Plaintiff alleges that she became certain that she was being stalked by the Athens County Sheriff Department in September 1988 after she was approached on an Athens County Road by the then Athens County Sheriff Bob Allen.

172. Plaintiff alleges that Sheriff Allen approached her car in September, 1988, a few minutes after the plaintiff had called the Ohio Public Utilities Commission to complain about pervasive bugging and wiretapping. Plaintiff made the call from a public phone across the street from the Sheriff's Department.

173.  Plaintiff alleges that following the call, the plaintiff was followed by Sheriff Allen in a patrol car. He stopped near her car on a rural Athens County Road, approached the plaintiff's car, and asked if she was " all right".  Plaintiff responded that she was "fine" and he left.

174.  Plaintiff alleges that approximately a month later an Athens County Sheriff's Deputy parked outside her home in Albany, OH when plaintiff was writing a letter to the U.S. Attorney General complaining of abuse of her U.S. Constitution Fourth Amendment rights.

175.  Plaintiff alleges that during the past nearly twenty five years, throughout the tenures of the Athens County  sheriffs from both political parties, it has been a policy of the Athens County Sheriff's Department to make conspicuous shows of authority in innumerable pass-bys both with sirens blaring and without sirens, driving past the plaintiff, stalking her vehicle on the road and threatening her with imminent police stop by tailgating,  passing her with two cars at a time numerous times, and generally intimidating the plaintiff  so that she is convinced that the Athens County Sheriff's Department has her under surveillance at all times that she is in Athens County and she considers herself to be under an illegal arrest although not incarcerated because plaintiff is never beyond the watch of the Athens County Sheriff's Department.

176.  Plaintiff  alleges that she believes that at anytime  the Athens County Sheriff Department knows of her whereabouts and could proceed to detain her in the county jail or the local mental health facility, Appalachian Behavioral Healthcare.

177.  Plaintiff alleges that illegal search and seizure by the Athens County Sheriff Department and shows of police authority have caused the plaintiff to move away from Athens County several times although plaintiff's children and now grandchildren  live in Athens County and plaintiff lived in rural Athens County raising her children without incident during the time of her marriage from 1971 – to 1988.

178.   Plaintiff states that former Athens County Sheriff Hicks stopped her on more than one occasion in 1991 and 1992 and said she should leave the county which plaintiff alleges is evidence of a conspiracy by Athens County to deprive the plaintiff of due process and the equal protection of laws and drive her out of the county.

179.   Plaintiff asserts that she moved away from and back to Athens County several times and for varying lengths of time between 1992 and 2006 because of the oppressive illegal police presence and the identity fraud conspiracy to discredit the plaintiff's rights and identity as the victim of an unlawful search and seizure which had the effect to cause extreme injustice also in plaintiff's enjoyment of her privacy rights and family life as the mother of four children, and her economic rights because she was forced to quit and was fired from several employers because of unlawful search and seizure.

180.   Plaintiff alleges that officials of the Athens County Common Pleas Court knew at the time of her divorce in 1988, that plaintiff was being searched by agents of Athens County, which had resulted in plaintiff having no counsel in her final divorce hearing and losing custody of her children, whereas her ex-husband was represented by counsel and won custody of her four minor children.

181.   Plaintiff alleges that incidents going back twenty five years show a pattern of differential treatment of the plaintiff from illegal search and seizure in violation of plaintiff's U.S. Constitution Fourth Amendment rights that also demonstrates a denial of plaintiff's due process and equal protection rights by Athens County and the Athens County Sheriff's Department.

182.   Plaintiff alleges that by January 4, 1991, when plaintiff was first committed to the now closed Athens Mental Health Center, by the Athens County Sheriff's Department, they were aware that plaintiff was planning to sue them and they likely listened in when she attempted to

acquire counsel to pursue a suit. Listening surveillance of the plaintiff is ubiquitous as is all surveillance.  She alleges that the Athens County Sheriff's Department were conspiring to deny the plaintiff of attorney client privilege and acted to deny plaintiff due process and equal protection of the law.

183.   Plaintiff alleges that in November 1991, she was again committed to the Athens Mental Health Center. She alleges that on the day of the commitment, November 29, 1991, she was first driven to the Athens County Sheriff's Department from rural Alexander Township where plaintiff had been visiting her son for his birthday. Plaintiff believes that the commitment on her son's birthday was deliberate cruelty and shows malicious interference in her family life by officials of Athens County.

184. Plaintiff alleges that her relationships with her son and three daughters were  irreparably harmed by the actions of Athens County officials and plaintiff suffered  many days of pain because of the arbitrary, cruel, and viscious actions of Athens County agents who knew at all times that the plaintiff was illegally searched, not free, a mind reading hostage, a victim of corrupt activities, and deserving of immediate freedom and restoration of her rights.

185.   Plaintiff alleges that when she asked the Athens County Probate Court clerk around 2008 to find the record of the two commitments in the Athens Mental Health Center,  the one beginning on January 4, 1991, and the one beginning November 29, 1991 they could only find the first commitment record at the Athens County Probate Court.  They told plaintiff that there was no record of  the November, 1991 commitment.

186.   Plaintiff alleges that the absence of a complete record at the  Athens Courthouse, and the presence a record with fundamental errors at Appalachian Behavioral Healthcare, (Athens, OH) points to the official corruption concerning the plaintiff's identity and case.

187. Plaintiff does not recall a commitment hearing for the commitment beginning in November, 1991. Therefore she alleges that the November, 1991 commitment did not even attempt the façade of due process by provision of a hearing and was in violation of her rights to due process under the U.S. Constitution Fourteenth Amendment stating that she shall not be deprived of life liberty, or property without a hearing and without the process that is due under the circumstances.

188. Plaintiff alleges that the result of the actions of the Athens County Sheriff conspiring with the State of Ohio in committing plaintiff to the Athens Mental Health Center twice in 1991 was that a poor mental health record was created against the plaintiff's parenting rights. But the issue unmentioned and unresolved was and is that the plaintiff is illegally searched and seized by government surveillance and that Athens County, Ohio is a U.S. Government agent of that surveillance in violation of plaintiff's U.S. Constitution Fourth Amendment rights.

Plaintiff states that she was at the AMHC for ninety days beginning November 29. 1991.

189. Plaintiff alleges that for the past twenty four years in Athens County, OH that she has been followed wherever she goes, be it to grocery store, walk for recreation, or do any mundane daily activity.

190. Plaintiff alleges that many people know that she is the subject of an ongoing government search and that she has been subjected to all manner of reactions to her presence through the years from cordiality to hostility.

191. Plaintiff alleges however that her status as an unjustly subjugated bisexual, non religious, pacifist , search subject has interfered in her full exercise and enjoyment of her economic rights to make a living because her identity is inextricably associated with some kind of notoriety and trouble and because government is searching where ever she is.

192. The result of the deleterious effect of the unlawful search upon the plaintiff's economic rights resulted in the plaintiff becoming homeless in Athens County in 1990, part of 1991, and part of 1992 because she could not find regular employment.

193. Plaintiff alleges that the Athens County Sheriff Department continued to stalk the plaintiff using patrol cars and making a show of authority for the past twenty five years. In 1996 the Athens County Sheriff Department deputy, driving a sheriff department cruiser, stalked plaintiff on Christmas Day on County Road 69 when she was going to visit her children.

194. In early February 1997, a Saturday morning, the plaintiff was followed into the village of Albany on Washington Rd. by an Athens County Sheriff cruiser. The deputy , who was extremely close to the bumper of her car, frightened the plaintiff because she had recently been rear ended and injured in an accident on the same road near Albany, Ohio only three months earlier.

195. In 1997 and 1998 plaintiff asserts that she was stalked repeatedly by Athens County Sheriff Department Patrol cars as she pursued claims for custody of her two youngest children, twin daughters. Often two patrol cars would drive in tandem one after the other passing the plaintiff on the road during her custody dispute.

196. On September 11, 1997 plaintiff filed an appeal in the Ohio Fourth District Court of Appeals to reverse the custody decision regarding her twin daughters so as to favor the plaintiff. On that day, the Athens County Sheriff department stalked the plaintiff in two patrol cars on Rt. 50 West in Alexander Township Athens County, near the Alexander High School where her daughters attended high school.

197. In 1998 the plaintiff discovered that the Athens County Sheriff 's Department were keeping track of her when she would pick up her mail in Albany , Ohio, (Athens County), where

she lived at that time. Sometimes a handicapped person whom the plaintiff knew as a former neighbor would leave his home after plaintiff was already walking to the U.S. Post Office in Albany, OH to pick up her mail. He would manage to be ahead of the plaintiff as he also walked to the U.S. Post Office to pick up his mail.

198.    Plaintiff noticed that the Athens County Sheriff Department deputy car was on a side street watching the plaintiff as she was walking behind the handicapped person by about twenty to thirty feet. But at no time was the plaintiff following or stalking the handicapped person as she came to believe she was being framed about. In fact she had no way of knowing beforehand who would be walking on the street when she went out to get the mail.

198.    Plaintiff alleges that over time she came to believe that the young man in question was actually stalking her via illegally searched information, that he was an agent for the Athens County Sheriff's Department, and that she, plaintiff, was being framed as if a predatory person stalking a handicapped person which she believed was an attempt to criminalize her identity because plaintiff is bisexual.

199.    Plaintiff states that she believes that because she is bisexual and because the Athens County Sheriff's Department had been searching plaintiff illegally for many years resulting in divorce proceedings that were fundamentally unjust and in violation of the plaintiff's due process rights that the Athens County Sheriff's Department attempted to frame her as if she was a stalker or a predatory person. She believes that the framing was attempted cynically and cruelly for the purpose of covering up the unreasonable and wrongful search of the plaintiff in violation of her U.S. Constitution Fourth Amendment rights, and for the purpose of casting the search in a light that would have been more favorable to the purposes of law enforcement making them not

liable for the harm that was done to the plaintiff in her enjoyment of her rights and property, her enjoyment of family life, private life, intimate life  and economic opportunity.

200.   Plaintiff alleges that many incidents occurred also where plaintiff would be observed by the Athens County Sheriff's Department walking behind another person as if following or stalking and plaintiff became uneasy that she was being railroaded in some way or that her person was being used in some scheme of which plaintiff was not aware so that merely walking down the street was always a worrisome event.

201.   Plaintiff alleges that the Athens County Sheriff's Department conspired to appropriate the plaintiff's identity as if she was associated with a group of handicapped and disabled persons for reasons of depicting the plaintiff as unwell or incompetent, acting in concert with handicapped persons or threatened to be depicted as criminal — stalking a handicapped person.

202. Plaintiff alleges that the motivation for the corrupt scheme of appropriating plaintiff's identity for use by handicapped persons  was a way of acting out homophobia because plaintiff is bisexual, and was a reprisal tactic because plaintiff had alleged that surveillance and intrusion had caused her extreme emotional distress entitling her to an SSI income when she was unemployed.  Plaintiff is no longer on SSI or Medicaid  and has not been for quite a few years.

203.   Plaintiff has always alleged that illegal search and seizure are unlawful intrusion, arrest, and privacy invasion issues causing her to be not free and in fact enslaved under the unlawful surveillance activities of a police state. She has always alleged injuries but she has never depicted herself as a handicapped or mentally ill individual or associated with a corrupt scheme of the government, which she alleges the federal government promoted  in awarding her SSI but never freeing her or acknowledging the harm to her person, rights, and property from unlawful

41

government surveillance activities. The harm to her property in her economic rights was why she had applied for SSI to begin with.

204.  The federal government corruptly promoted a criminal scheme to keep plaintiff a hostage, while pursuing illegal human experimentation in mindreading technology, by sending her a monthly SSI check between 1994 and approximately 2003 which agents of Athens County attempted to railroad the plaintiff about.

205.  Plaintiff states that she verbally complained to the Athens County Sheriff's Department deputy at the Athens County Sheriff's Department in 1999 about being illegally searched and that mind reading was being used.  Plaintiff alleges that the deputy answered her sarcastically that  concerning "mind reading" he  "could use that to interrogate prisoners."

206.  In July  (20) of 2000 the plaintiff moved away from Athens County and lived in Marietta, OH for the next six years. The Athens County Sheriff Department made a show of authority driving past the plaintiff as she walked on the road near her home on the day that she moved.

207.  Plaintiff states that she moved back to Athens, OH for the purpose of attending graduate school at Ohio University. She alleges that many times during the past six years the Athens County Sheriff Department has made many shows of authority driving past her and that she is still under the unlawful intrusive surveillance of the Athens County Sheriff's Department in violation of her United States Constitution Fourth Amendment rights.

208.  Plaintiff alleges that on 12-17-08, plaintiff was oppressed by a show of authority by two Athens County Sheriff's Department cruisers (#20 and possibly #12) in the next block at the corner of College and Washington Streets in Athens, OH.

209.  Plaintiff alleges that two Athens Sheriff Department cars passed her when she was at the Athens Post Office parking lot at or near 5pm  on 1-5- 09.

210. Plaintiff alleges that on 9-14-11 she was being followed by Athens County Sheriff cruiser # 21 on Stimson Ave. as she drove back into Athens after being at her daughter's house just outside town.

211. Plaintiff alleges that on 9-19-11 she was standing in front of the Athens County Courthouse for a weekly Monday peace vigil, (11:30am – 12:30pm) when an Athens County Sheriff's Deputy driving cruiser # 25 circled the courthouse three times. After that, ACS cruiser #204 passed and turned to the right.

212. Plaintiff alleges that she was driving in Athens on 10-5-11 when an Athens County Sheriff cruiser got in front of the plaintiff staying in front of her as she drove to E. State St. in Athens.

213. Plaintiff states that on 11-18-11 she went walking at 4:35 pm and walked a while on the Athens bike path . Plaintiff alleges that Athens County Sheriff car #35 passed the plaintiff as she approached the bike path from Stimson Ave. Subsequently the plaintiff was tracked by a small plane overhead, which she believes to be the Ohio Highway Patrol as she walked on the bike path.

214. Plaintiff alleges that the Athens County Sheriff made an illegal show of authority on 1-30-12 as he drove down a small hill on East State St. in Athens near the College St. intersection. He was driving a black suv Athens County Sheriff Department vehicle and wearing dark sunglasses.

215. Plaintiff alleges that on 10-13-12 at 8:10am she was harassed by two Athens County Sheriff Department cars who started their sirens and went fast in tandem around the corner from Washington St. to Court St.in uptown Athens. Plaintiff had just parked her car across from the

Athens County Board of Election and was going to early vote when the sheriff cars and sirens started screeching.

216.   In regards to the above allegation, plaintiff alleges also that because she had been working on her complaint against Athens County during the previous evening or two evenings that she was being harassed about her claims because she is unlawfully searched continuously by the Athens County Sheriff Department.

217.   Plaintiff alleges that on 11-3-12 the Athens County Sheriff staked her out along Rt. 13 in Athens County as she was driving towards Athens, OH. in the afternoon.

218.   Plaintiff alleges that on 11-7-12 she stopped at the store in Athens on her way home from work and that Athens County Sheriff cruiser 5-13 car # 6 was already at the store because the Athens County Sheriff Department has access to mind reading data since they act as agents of the federal government. Therefore they knew where plaintiff would be going next.

219.   Plaintiff alleges that Athens Sheriff Pat Kelly has personally followed the plaintiff on several occasions including on April 23, 2011 when he followed plaintiff to the Walmart store in Athens, OH.


## COUNT 9
**Complaint against Ohio University, Athens, OH, President R.  McDavis, of Ohio University WOUB, Athens, OH, and Mr. Tom Hodson General Manager of WOUB Radio and Television**

220.   Plaintiff incorporates the previous statements #1  to # 219.

221.   Plaintiff states that she has been a student at Ohio University   "O.U"  "the university"  at various times 1967 – 1971, 1989, and 2005 – 2012 and completed bachelor and master degrees from O.U. She states that her primary association with  O.U. was always as an education

44

consumer, but that while a student she was sometimes employed as a student worker, meaning minimum wage hourly part time work ( or close to minimum wage ) and no benefits.

222.   Plaintiff asserts that in 1986 and in 1994 she applied for full time work with benefits at O.U. in the non-professional unskilled labor classification, housekeeping and food service, because she had not yet finished her degrees,  but was not hired.

223.   Plaintiff alleges that O.U. has participated in the illegal search and seizure of the plaintiff at least since 1988 but she does not know precisely when the search began.

224.    Plaintiff alleges that in the Winter of 1989 she took a seminar course in Political Science at Ohio University in Athens, OH toward completion of her bachelor of arts degree, but because she was being illegally searched, some staff and students in the course made veiled references to the plaintiff's status as a search subject in their comments and speech causing the plaintiff to feel harassed, whereby she subsequently dropped the course which had cost her four hundred dollars at the time.

225.   Plaintiff has reason to believe that knowledge of the illegal search of plaintiff was leaked by the university to the general public in Athens, Ohio and beyond  and that Ohio University participated in causing the plaintiff to be the butt of ridicule and sexist abuse while furthering a conspiracy to deprive the plaintiff of constitutional rights and cover up illegal human experimentation in mind reading.

226.   Further, plaintiff alleges that the university devalued her circumstances as an illegally searched and seized human experimentation hostage, and  political prisoner by suggesting that plaintiff was an unchaste woman and caused the plaintiff to be harassed innumerable times on campus by students and staff suggesting the plaintiff was unchaste.

227.   Plaintiff alleges that she was followed many times on campus and that crude suggestions took the form of pantomime and commentary by followers or passersby.

228.   Plaintiff alleges that suggestion in the form of commentary and passersby was also a means of interrogating the plaintiff by prompting her thoughts in a specific direction because the plaintiff is the subject of an illegal mind reading search, as well as a means of harassing the plaintiff.

229.   Plaintiff alleges that WOUB, the Ohio University public radio and television station, participates in the illegal search and seizure of the plaintiff, such that the plaintiff is monitored by WOUB every day 24/7, and deprived of all privacy in violation of her U. S. Constitution Fourth Amendment rights.

230. Plaintiff alleges that Mr. Tom Hodson, General Manager of WOUB has knowledge of the plaintiff's status, that she is illegally searched, not free, and being subjected to mind reading and torture, under the unlawful surveillance activities of the United States government and its agents.

231.   The plaintiff has many times been followed by the Ohio University Police Department, "O.U.P.D" and has reason to believe that she is under surveillance by the O.U.P.D. 24/7.

232.   Plaintiff has reason to believe that anytime she is on the Ohio University campus in Athens, OH that she is under surveillance by the O.U.P.D. Plaintiff believes that the O.U.P.D. have access to a data feed concerning the content of plaintiff's thinking and other illegally searched information.

233.   Plaintiff asserts that she often walks for exercise in the O.U. campus area and O.U.P.D. will often make a show of authority by appearing near plaintiff or following her.

234.  For example on several occasions, the O.U.P.D. and other O.U. vehicles have followed the plaintiff on the bike path that goes through the O.U. golf course. They have followed the plaintiff for the purpose of intimidating and oppressing her. The bike path is no wider than a car width and vehicles are ordinarily prohibited from the path and do not use it. But O.U. vehicles including the O.U.P.D have used it to pursue the plaintiff on several occasions when she was walking for exercise, confronting and passing plaintiff.

235.  In January 2011 plaintiff alleges that she was oppressed and harassed by Ohio University Reserve Officer Training Corps  "ROTC"  students who, on two different days,  made a show of oppression by running out of their classroom when plaintiff had just signed into the gym at 6:30am and ran past plaintiff up the stairs and were utilizing all treadmills by the time the plaintiff arrived in the gym equipment room so that plaintiff could not exercise until they left.

236.   Plaintiff alleges that their actions were deliberate and for the purpose of intimidating the plaintiff because of her unjustly subjugated status as a government hostage, and because plaintiff has brought claims against the military in various lawsuits alleging that she is illegally searched by military surveillance in violation of her U.S. Constitution Fourth Amendment rights.

237.  In January 2011, plaintiff complained to academic personnel, Assistant Dean Douglas Franklin, at the Ohio University Ping Center, because she felt oppressed by the actions of  Ohio University ROTC students monopolizing the exercise equipment and thunderously running past her on the stairs to get to the equipment.

238.  Plaintiff alleges that when she went to the work out room at the O.U. Ping Center on 12-12-11 wearing a T-shirt that said she is a "Mind Reading Slave" and that she needs her "Fourth Amendment rights" and that "Privacy Rights Save Freedom" the radio in the workout room started playing a song with the refrain " But the bitch came back the very next day" which shows

47

the viscious harassment to which plaintiff is subjected, this time by a radio station. It also shows that the plaintiff was being monitored by broadcast media even at the Ping Center gym at Ohio University.

239. Plaintiff alleges that she was followed to the GO- MART gas station on East State St, in Athens, Ohio on the morning of November 26, 2012 by a car that looked just like a two-tone black and white OUPD cruiser but that it had no police ID markings. But it did have two loud speakers mounted to the roof of the cruiser, one on either side. The license plate said [OH] **BLU BROS.**

240. Plaintiff asserts that on November 28, 2012 the same vehicle stalked the plaintiff on US 50 East in Belpre, Ohio, nearly thirty miles away, at approximately 5:30 pm. It turned onto US 50 W from a side road and travelled in the left westbound lane for about a half mile slightly ahead of plaintiff who was in the right lane.

241. Plaintiff alleges that on December 9, 2012 the plaintiff was walking on the O.U. campus near the Peden Stadium and crossed South Green Drive at about 8:15 am when she saw an O.U. P.D. cruiser drive past her making a show of authority as it pulled into the Walter Hall parking lot.

242. Plaintiff asserts that as a graduate student she was employed in late 2006 and until May 2007 as a student worker in a computer lab at Ohio University.

243. Plaintiff alleges that she was fired from her job at the computer lab after she reported for work several hours late one night. She asserts the firing was not fair because other students were not fired for being late to their jobs. Plaintiff alleges that the firing in computer lab was the result of a prejudice against the plaintiff on the part on Ohio University.

244.   Plaintiff asserts that as a student she worked for Ohio University food service at Bromley Hall in 2006 and that she was fired after she was told she did not have to report for work during finals week which was an erroneous report. Subsequently she was not rehired for the Fall quarter.

245.   Plaintiff alleges that in 2011 and early 2012 she was a pronunciation lab tutor in the Ohio Program of Intensive English (OPIE) at Ohio University and was fired unfairly because it was said she lacked certain technical skills in using the OPIE computer program.

246.   But plaintiff alleges that other students, who were not fired,  were also challenged by glitches in the OPIE  pronunciation lab computer program and in fact had come to her on several occasions and asked what they should do to get past glitches in the system.

247.   Plaintiff alleges that while she worked at the pronunciation lab that she was surveilled by not only the O.U.P.D. but by the Army and Air Force which ran O.U. ROTC program and who were housed in the same building as the Ohio University pronunciation lab.

248.   Plaintiff alleges that in her employment at Ohio University which was terminated  unfairly there was an atmosphere of spying and surveillance that other employees were not subjected to and was targeted at plaintiff personally.

249.   Plaintiff alleges that she has reason to believe several of her supervisors were aware that the university was surveilling the plaintiff and violating plaintiff's rights.

250.   Plaintiff has reason to believe that she was defamed by Ohio University as if she was an agent for government surveillance or an agent for her sister who lives in N.Y. State and that Ohio University conspired to perpetuate a conspiracy to defraud the plaintiff concerning the violation of her U.S. Constitution Fourth Amendment rights by suggestion that plaintiff was complicit in the intrusion against her privacy rights, or that she was an agent for her sister in New York.

251. Plaintiff alleges that she complained of vandalism to the O.U.P.D. on July 7, 2012 after driving over a glass bottle in the O.U. Baker Center garage which she believed had been placed under her car tire after she had parked in the garage.

252. Plaintiff alleges that on January 5, 2013 she was subjected to a show of authority by Ohio University when a vehicle with markings indicating the City of Athens Ohio and Ohio University continued to stake plaintiff out when she is going somewhere. In this instance, plaintiff was going to a doctor appointment.

253. Plaintiff alleges that she has been the victim of a conspiracy in Athens, OH to depict her as unwell and she believes that officials of the university and city staked out her doctor appointments.

254. On Jan 9, 2013, plaintiff was walking through Ohio University Baker Center in the late afternoon. There were no other persons near the information desk on the fourth floor because Ohio University was still on holiday break. Plaintiff heard a female worker at the information desk say the word "child" and nothing else. The word child being harassed at the plaintiff in passing is an example of the ongoing public suggestion in the Ohio University community that the plaintiff is considered not well or an infant and incompetent in the legal sense which plaintiff alleges is a conspiracy to medicalize the plaintiff's identity and treat plaintiff as if an infant or incompetent, because of the previous record created by Athens County and because of the guilt of the plaintiff's searchers.

## COUNT 10

**Complaint against the City of Athens, Ohio, Mayor Paul Wiehl, Police Chief Tom Pyle for violations of plaintiff's First, Fourth, and Fifth, Ninth, Thirteenth and Fourteenth Amendment rights, conspiracy to violate plaintiff's rights ( 42 U.S.C. 1985), failure to take action to stop a civil rights conspiracy, (42 U.S.C. 1986), abuse of process and malicious process (42 U.S.C. 1983).**

255.   Plaintiff alleges that the City of Athens has engaged in and furthered the conspiracy to violate the plaintiff's rights herein described at paragraphs # 1- #254.

256.   Plaintiff alleges that actions of agents of the City of Athens, Ohio have violated her First, Fourth, and Fifth, Ninth, Thirteenth and Fourteenth Amendment rights since 1988 or before when she became aware that she was being surveilled by the Athens Police Department "APD". Plaintiff also alleges that the City of Athens has abused process and pursued malicious prosecution of the plaintiff.

257.   Plaintiff alleges that she has reason to believe that the current mayor, Mayor Wiehl is completely aware of the constant surveillance of her person, and that the previous two mayors, Mr. Abel, and Ms. Hendicker were also aware of the plaintiff''s unlawfully searched and continuously detained status under surveillance rendering plaintiff a prisoner because she is never beyond the surveillance of the City of Athens.

258.   Plaintiff states that she has lived in and near Athens, Ohio for most of her adult life, lived in rural Athens County for eighteen years, 1971 – 1989, and currently has resided in the City of Athens since August 2006 nearly seven years.

259.   Plaintiff states that she has never been cited by the City of Athens except for parking violations, but that they have continued to illegally search her for at least twenty five years if not longer.

51

260. Plaintiff alleges that she believes that the City of Athens, Ohio has acted as agents for the federal government, the DOJ and DoD if not other agencies, and churches in keeping track of the plaintiff when she is in and near Athens, Ohio.

261. Plaintiff alleges that agents for the City of Athens are both uniformed and non-uniformed and that stalking of the plaintiff has occurred every day that she has been in the City of Athens since 1988 or before.

262. Plaintiff alleges that she believes that the APD monitors her activities within the City of Athens via a data feed from electronic and other high tech surveillance including mind reading technology being conducted by the federal government.

263. Plaintiff states that the APD have made innumerable shows of authority in their police cars, driving past the plaintiff when she is in her car or on foot over a period of the past twenty five years.

264. Plaintiff states that Athens parking meter officers have kept track of the plaintiff and in some instances have stalked the plaintiff outside the City of Athens. For example in the Spring of 2000, a City of Athens meter patrol woman stalked plaintiff when plaintiff was taking a walk in rural Alexander Township.

265. Plaintiff alleges that she has reason to believe that her efficiency apartment at 3 ½ Ohio Ave. Athens has been trespassed repeatedly in violation of her constitutional rights and that agents of the City of Athens are at fault.

266. Plaintiff alleges that physical and electronic surveillance of the plaintiff within the City of Athens is ubiquitous and pervasive because plaintiff is a public hostage, a commonly known search subject in the city, and that persons are permitted and encouraged by the city to follow

the plaintiff because of her unlawful second class citizen status as the subject of an ongoing search and mind reading search.

267. Plaintiff states that she is often harassed by persons following her in the form of commentary and body language. For example, plaintiff was taking a walk on January 13, 2013 when she stopped to read a movie poster in front of a theater in Athens. Two people who plaintiff did not know and had not heard or seen previously, but were following plaintiff then commented: " There's that real movie buff." (female). A male companion said " It is too."

268. Plaintiff alleges that various persons in the Athens, OH area who are associated with some local churches, handicapped persons, handicapped advocacy, Ohio University, and other individuals or groups are permitted by the APD to stalk the plaintiff, following her when she runs errands, goes for a walk, or other activities in the City of Athens, OH, although plaintiff is not and never has been associated with any of those groups with the exception of recently being a student at Ohio University.

269. Plaintiff asserts that she met with then Athens Chief of Police Mayer and now current Athens Chief of Police, Tom Pyle, in February, 2007 and that both were fully aware of her objections to being surveilled, being violated in her privacy rights, and her concerns about predatory stalking, trespass, and vandalism in and at her efficiency apartment at 3 ½ Ohio Avenue, Athens, OH and her assertions of her U.S. Constitution Fourth Amendment rights.

270. Further, plaintiff alleges that she complained to APD officials Mayer and Pyle (February 2007) that a " KEEP ABORTION LEGAL" bumper sticker had been scratched off her car in early 2007.

271. Plaintiff alleges that in a written complaint to the City of Athens Police Department on March 21, 2007, she complained of an intruder in her home who had moved a shower rod and

used an envelope from a greeting card from plaintiff's sister to prop open the trash can in plaintiff's apartment. This shows the ongoing railroad of plaintiff concerning her sister.

272. Plaintiff alleges that on March 1, 2007 she complained in a letter to the APD that she was a victim of predatory stalking by certain individuals in the Athens area which she alleges is because of her illegal status as an illegal mind reading search and seizure subject.

273. Plaintiff has many examples of the ongoing conspiracy and police harassment that plaintiff has been subjected to. She was summoned to appear in Athens Municipal Court several times between 1992 and 1995 because of tickets issued by the Ohio Highway Patrol "OHP" based upon spurious allegations because the OHP always knew the plaintiff's exact whereabouts.

274. Plaintiff alleges that the Athens Municipal Court knew that the plaintiff was the target of police harassment in Ohio, and that at least one ticket was resolved in her favor.

275. Plaintiff alleges that Officer Gura of the A.P.D. maliciously pursued prosecution of the plaintiff in 1995 knowing that plaintiff was unlawfully searched in violation of her rights and that process had been abused so as to unlawfully deprive the plaintiff of her driver license without due process, because of the nature of her claims for Fourth Amendment rights.

276. Plaintiff alleges that she appeared before Judge Bennett in Athens Municipal Court on August 9, 1995. Judge Bennett, threw out a citation against the plaintiff for driving without a license.

277. Following a municipal court hearing, on August 9, 1995 concerning traffic violations, plaintiff met with Attorney Robert Toy in Athens Ohio, expressing her wish to sue the FBI for illegal search and seizure.

278. Following her meeting with Attorney Toy on August 9, 1995, the plaintiff was confronted in the Athens Parking Garage by Officer Gura, of the APD who had threatened to arrest plaintiff

previously when confronting her in the Athens Parking Garage, and seemed to have a bias against the plaintiff. He told plaintiff that she was under arrest for driving on a suspended license although the Athens Municipal Court had thrown out a ticket two hours earlier. Officer Gura demanded that plaintiff park her car in a handicapped space where it was subsequently towed.

279.  Office Gura said that he had a warrant from the City of Dublin, Ohio for failure to appear concerning driving on a suspended license.

280.  Plaintiff was taken back to the Athens Municipal Court and charged anew with driving on a suspended license. Judge Bennett released plaintiff on her own recognizance. Plaintiff was living in Parkersburg WV at the time, 30 miles away, and had no other means of getting to court.

281.  Plaintiff was directly taken to the Athens County Sheriff Department where she waited in a jail cell until an officer from the City of Dublin arrived to transport plaintiff to Franklin County.

282.  Plaintiff was taken to the Franklin County jail in downtown Columbus, OH on the evening of August 9, 1995 and incarcerated.

283.  Plaintiff had a hearing on August 11th and was then transported to the Jackson Pike Workhouse in Franklin County to spend the remainder of a week in jail. After a week in jail, the plaintiff was freed based upon time served.

284.  Plaintiff alleges that by 1997, plaintiff no longer drove her vehicle into the City of Athens. By then she had obtained a West Virginia driver license and lived in Parkersburg, WV. She was forced to park her car outside Athens, OH city limits because of fear that her license would be illegally confiscated and her driving privileges summarily terminated such was the sense that she was being hunted by the APD.

285.   Plaintiff alleges that these events  caused ongoing interference in her family life because her children did not want to suffer the embarrassment of plaintiff being repeatedly stopped by police to have her license checked, when in fact the police were illegally searching the plaintiff continuously in violation of her rights.

286.   Plaintiff alleges that the City of Athens, OH drove the plaintiff out of town, forced her to move, in order to escape police harassment and license trouble from 1993-1999.

287.   Athens Police Officer Gura followed plaintiff and her daughter to a restaurant in Athens in 2001, ( Hardees on E. State St. Athens). She alleges that Officer Gura was standing up at his table in Hardees which plaintiff  believed to be some kind of nazi tactic.

288.   Therefore,  plaintiff alleges a conspiracy in Athens, OH to maliciously prosecute the plaintiff and to abuse process for the purpose of malicious prosecution.

289.   Plaintiff was once followed by an APD parking meter patrolwoman in plain clothes, outside the City of Athens. The patrolwoman was wearing street clothes and on a bicycle, following plaintiff who was walking on CR 19, near where she was living at the time.  This occurred 2 miles outside of Athens city limits. (See # 264)

290.   Plaintiff alleges  that the same officer crossed on foot in front of the plaintiff on W. Union Street in Athens, OH  in December, 2001 and did so to get the plaintiff's attention and intimidate her.

291.   Plaintiff alleges that again the same APD patrolwoman acting as a meter maid stalked the plaintiff in November 2002, crossing Court Street in Athens seemingly in tandem when the plaintiff was crossing Court Street in Athens, OH.

292.   Plaintiff alleges further that the Athens Police Department is fully cognizant of a conspiracy to "medicalize" the plaintiff's identity, to depict her as an incompetent or ill person at the expense of plaintiff's constitutional rights.

293.   Plaintiff alleges that she believes that Chief Pyle and former Chief Mayer of the APD are aware of a conspiracy to appropriate the plaintiff's identity as if she is an agent for the handicapped community, which plaintiff has never been.

294.   Plaintiff alleges that surveillance of her person is shown in the following ongoing numerous incidents of drive-by and shows of authority which are not limited to those complained of herein.

295.   Plaintiff went for a walk on 12-7-09 and was harassed twice by APD shows of authority, driving past her and turning to go down a hill on Mill St. in Athens and nearly an hour later driving past  her while going down a hill on E. State St. in Athens, OH.

296.   Plaintiff alleges that she was surveilled on foot by the APD on 12-9-08.  An Athens City meter patrolwoman was walking on the same sidewalk  on E. State St. as the plaintiff at about 11:30am. Plaintiff alleges that the meter patrolwoman was walking toward the plaintiff and stepped  into the street right before passing the plaintiff, who was walking home from her employment at that time at WENDY*S .

297.   Plaintiff alleges that a kind of  harassment of the plaintiff involves stalking her and observing if she is walking in front of or behind other persons.

298.   Plaintiff alleges that her right to walk or drive freely down the street in Athens without obstruction or harassment by passersby and shows of authority by the APD is violated and that she is treated as less than a full citizen because in being harassed and obstructed as a pedestrian or motorist in Athens she is unlawfully deprived of privileges and immunities

guaranteed by the Fourteenth Amendment to the U.S. Constitution. Those activities

unconstitutionally call her citizenship into question.

299.   Plaintiff states another example:  on 12-17-08 she was followed while walking on  E. State

St. street in Athens by a male with a phone into which he spoke  He got in front of the plaintiff

who was walking to work. Near the intersection of E. State St. and College St. an  Athens Police

Department  SUV rounded the corner and observed the plaintiff walking behind the male with

the phone, which had no other personal significance to the plaintiff. But she felt that her right to

walk freely down the street had been interfered with in an illegal way, because of the young man

with the phone and the APD observing plaintiff walking behind him as if a "follower".

300.   Plaintiff  states that another element of the political subdivision tort that she alleges is that

her person may be conscripted into public "drama" and  "acting out" about which plaintiff has

not been informed.

301. Plaintiff alleges that on 12-20-08 near 7:00am she went into a Speedway gas station

convenience store on E. State St. in Athens. A male at the counter who appeared to be a

customer said: "Do you have any brain cells left?"  which plaintiff alleges was a reference to the

fact that she is illegally searched by the U.S. Government using mind reading technology.

302. Plaintiff alleges that because she is a mind reading hostage, a public hostage,  and because

her brain is illegally searched continuously, the male was making an insulting comment.

303.   But the man's comment  also suggests that the plaintiff is stupid or incompetent.

304.   Plaintiff alleges that the comment also shows the political subdivision tort which is

perpetrated in Athens against plaintiff  because she is being illegally searched as an individual,

bisexual, pacifist, woman in violation of her constitutional rights and does not act as an agent for

a government agency, public utilities, churches, the handicapped community, or anyone else.

58

305.  On 12-28-08 plaintiff was riding her bike on Stimson Ave. in Athens at approximately 3:12 pm . A woman in a small black car, like a Sentra or Mirage, drove her car crazily toward plaintiff in the opposite lane, wobbling her steering as if to suggest she would hit plaintiff with her car. Plaintiff alleges other similar incidents.

306.  Plaintiff alleges that on 12-31-08 plaintiff was approached by two white males in the Kroger parking lot who said to plaintiff "She's got it." as they walked past. "Got it" and "get it" are common harassment phrases which may refer to GI and the military, plaintiff doesn't know. In that way plaintiff feels harassed about her unlawful status and also believes that she is defamed as if associated with the military which has never been true but because of the conspiratorial silence in Athens as to the plaintiff's circumstances, she believes defamatory schemes are continuing.

307.  Plaintiff alleges that on 1-5-09, between 6:10 am and 6:20 am she was riding her bike to work in Athens when an APD patrol car crossed in front of her bike as the APD left its parking lot on College Street in Athens, OH, which plaintiff alleges was an oppressive show of authority.

308.  Plaintiff alleges that a few minutes later the plaintiff was startled by an Athens Sheriff Department car starting up near the intersection of Court St. and Washington St. in Athens, which she alleges was also an oppressive show of authority.

309.  Plaintiff alleges that on 1-8-09 as she was walking to work at approximately 6:15 am a City of Athens salt truck ran a red light and nearly hit the plaintiff. This incident occurred after plaintiff had sent an e-mail to Athens Mayor Paul Wiehl the previous evening complaining about her circumstances.

310.  Plaintiff alleges that on or near August 1, 2011 she called J.C. Penney to report a lost or stolen JCP credit card. The following evening when plaintiff was walking at about 9:11pm on

Court St. in Athens near the O.U. campus, 4 or 5 male students came up behind the plaintiff and one of them said: " Somebody literally stole it. I know cause there's a $6 charge that I didn't put there. "  Plaintiff alleges that the nature of the  O.U. -Athens political subdivision tort will refer to plaintiff's phone conversations or personal business and comment, which is shown in the student's remark.

311.   On August 24, 2011 at about 8:50am,   APD # 905 followed plaintiff on her street and passed plaintiff when she parked in front of her house. It then turned left at a nearby corner.

312.  Plaintiff states that she was walking in Athens on the evening of August 24, 2011 when the APD cruiser # 903 made a show of authority at the corner of College St. and E. State St. at approximately 8:05pm.

313.  Plaintiff  states that she was walking in Athens on the evening of August 30, 2011. At about 8:05 pm as she was walking on College St. an APD cruiser left the APD parking lot, making a show of authority, when plaintiff was approaching that driveway.

314.  Continuing on her walk the plaintiff was passed by the Ohio University Police Department, making a show of authority,  about twelve minutes later on Richland Ave. in Athens.

315.   A few minutes later plaintiff was passed by an APD suv near the Richland Ave. bridge in Athens.

316.   A few minutes later when plaintiff was still walking on Richland Ave. near the O.U. Convo Center in Athens,  an APD suv turned right at S. Green Drive in Athens, making a show of authority.

317.   A few min later the OUPD again passed the plaintiff on Richland Ave. in Athens driving up a hill towards the uptown area.

318.   Plaintiff alleges that the repeated passbys by the O.U. and Athens police departments are harassment.

319.   Plaintiff alleges that on 8-25-11, an APD suv followed her when  she went to Kroger in Athens to pick up a prescription for an antacid because she has acid reflex disease which she alleges is the result of several causes including stress and microwave assault. [She had successful colon cancer surgery in February 2002.]  This occurred immediately after plaintiff had sent a petition for a Writ of Habeas Corpus via FedEx to the federal court in Washington, D.C.

320.   Plaintiff believes that the Chief of Police Pyle was driving the APD suv. on East State St., Athens,  at approximately 12:15pm. Plaintiff had named President Obama as a defendant in her Petition for a Writ of Habeas Corpus. Thus, the Chief of Police following plaintiff suggests mocking the plaintiff's petition, because President Obama is the Chief Executive. Mocking and ridicule of plaintiff have been common and are characteristic of the police show of authority.

321.   Plaintiff was walking the evening of 8-31-11 when two officers in an APD cruiser passed the plaintiff  going down the hill near the intersection of College St. and East State Street which plaintiff  alleges is a reference to a sex act and that is a means of harassing plaintiff. (See # 295).

322.   Plaintiff alleges that on 11-4-11 after attending a lecture,  she was walking on College St. in Athens,  at about 9:05 pm when  an APD cruiser left the police department parking lot when plaintiff walked past.

323.   Plaintiff alleges that she was walking on Richland Ave. in Athens on the evening of 11-14-11 when an  APD cruiser drove by making an illegal show of authority.

324.   Plaintiff alleges that on 11-21-11 the APD made an illegal show of authority in a police cruiser turning left onto College St. from Mill St. when plaintiff was walking in the early evening between 7:10 pm and 8:50 pm.

325.   Plaintiff alleges that on 12-6-11 she was followed home by APD vehicle # 905 at approximately 8:20am after walking at the local mall and stopping at a grocery store.

326.   Plaintiff alleges that on 12-7-11 the APD was parked by the side of Stimson Ave. when plaintiff went through the SONIC drive thru before 6:30 am to buy coffee.

327.   Plaintiff  took her grandchildren to an Athens Park on 3-18-12 when she noticed that an APD was sitting outside the park surveilling her while there at a little past 6 pm.

328.   Plaintiff alleges that on March 25, 2012 she noticed a clay tile in a shop window in up town Athens that she passes frequently while walking. It said " It may be that your sole purpose in life is simply to serve as a warning to others."  A short while later when plaintiff was on her way to take a picture of the tile, an APD cruiser pulled up behind her and roared its siren scaring the plaintiff at which point another cruiser showed up and both turned right onto College St. at 12:19 pm. Plaintiff alleges that she was being harassed and the APD were making an illegal show of authority.

329.   Plaintiff alleges that as she drove into town on East State street on 4-2-12 an APD vehicle #902 pulled in front of her from a driveway at or near Aldi's supermarket. It went into the middle lane and then got in front of the plaintiff.

330.   Plaintiff alleges that when she was walking passed the APD  in the early evening on 4-2-12 while talking on her phone to a friend in Texas, that her phone went dead and that the battery was low. But when plaintiff returned home and plugged her phone in to charge, the battery was fully charged.  Plaintiff alleges that the APD was interfering in her phone call.

331.   About an hour after the incident alleged in # 291 the plaintiff was walking on Richland Ave. in Athens near the Rt. 682 intersection when she noticed APD car #905 or 906 nearby on Richland Ave. Plaintiff alleges that the APD was making a show of authority.

332.  Plaintiff alleges that on 2-8-12 an APD cruiser followed her out East State St. in Athens when she was going to the mall to walk at or near 6am.

333.  Plaintiff alleges that she got a small coffee at the SONIC on Stimson Ave in Athens at or near 6am on 4-30-12 and that the APD were watching her from across the street.

334.  Plaintiff alleges that on 5-7-12 an APD cruiser was parked in the mall parking lot on East State St. in Athens at or near 6 am when plaintiff arrived there to walk. It left at 6:45am. Plaintiff alleges it was an unlawful show of authority.

335.  Plaintiff alleges that on 6-4-12  when she was returning to Athens from working out of town at about 5:35 pm an APD cruiser was in the left lane of East State St. when plaintiff passed it on the right. The APD cruiser then got behind the plaintiff and followed her. Plaintiff alleges that she was assaulted in the genitals by a microwave hit while driving when the APD cruiser began following her which shows also the continuous surveillance by the U.S. military while plaintiff was driving. ( Plaintiff is not suggesting that the APD police cruiser attacked her with microwave and does not believe that the APD utilize that technology. )

336.  Plaintiff alleges that on 7-12-12 she returned to Athens at about 7;40 pm after working out of town and was driving to her home. On E. State St. an APD suv K9 vehicle was driving next to the plaintiff, the APD in the left lane and the plaintiff on the right which plaintiff alleges was an illegal show of authority.

337.  Plaintiff alleges that on 7-12-12 when she got home, she noticed that her apartment door was open and a dime had been left on the floor in front of her refrigerator. She believes that her home was unlawfully trespassed in violation of her U.S. Constitution Fourth Amendment rights.

338.  Plaintiff  states that on 7-16-12 she was walking on Richland Ave. in Athens near the O.U. campus at approximately 9:30 pm when a car drove past the plaintiff honking five times. Right

63

afterwards, two white male college students walked passed the plaintiff. One of them said as passing " Gonna break in and search." At that point APD cruiser # 902 appeared, turning from South Green Drive onto Richland Ave. and passed the plaintiff going in the same direction as the car that honked five times.

339. Plaintiff alleges that the above incident shows the political subdivision tort in Athens that violates the plaintiff's rights to privacy and freedom from continuous search and seizure and involves students and townspeople in following and harassing the plaintiff.

340. Plaintiff states that she was stopped by the APD on 9-11-12 on East State St. in Athens in the late afternoon or early evening when she was going home after working out of town. The APD officer told plaintiff that she was speeding, doing 51mph in a 35mph zone. The APD officer did not write the plaintiff a ticket. Plaintiff does not believe that she was traveling that fast because she is usually very careful and alleges that she was being harassed concerning 9-11-01 because of her claims of being pointed at by terrorists. (See # 161-#165)

341. Plaintiff alleges that on 2-14-13 she was being watched as she was driving on Stimson Ave in Athens at about 9 am by APD who she saw were watching her as she passed on her way out of town. Plaintiff states that she worried that her apartment would be broken into while she was gone because she knew that her landlady was not home either.

### Count 11
### Complaint Against the Ohio Highway Patrol and the Ohio Bureau of Motor Vehicles

342. Plaintiff incorporates the foregoing allegations #1 to #341 alleging a broad-based conspiracy showing violations of constitutional rights and conspiracy to violate the plaintiff's rights.

343. Plaintiff alleges that the Ohio Highway Patrol "OHP" has been involved in illegally searching her in violation of her U.S. Constitution Fourth Amendment rights since at least the

late 1980s, but she does not know precisely when it began. This complaint shows a pattern of illegal search and seizure, illegal detention, unjust subjugation and constitutional rights violations, harassment, and conspiracy that has continued over a period of the past twenty six years.

344.   Further, plaintiff alleges civil rights conspiracy, malicious prosecution, malicious abuse of process, harassment, humiliation, and unlawful deprivation of plaintiff's driving privileges in violation of her due process rights.

345.   Plaintiff states she was in a fender bender auto accident in August 1986 where the OHP officer called to the scene of the accident on a rural road (CR 76) in Alexander Township, Athens County, Ohio unjustly cited only plaintiff for being left of center when the other vehicle, a pickup truck ( driver W. Cumbo) which had struck plaintiff's car, had run a stop sign.

346.   Plaintiff alleges that the OHP keep track of her anytime that she travels outside the jurisdiction of a municipality in Ohio.

347.   Plaintiff alleges that the OHP deliberately attempted to cause harm to her family life because of plaintiff's unlawful status as victim subject of an unlawful search and seizure.

348.   Plaintiff alleges that her family life has been irreparably harmed by the actions of the OHP in harassing and stopping the plaintiff during the 1990s and unlawfully depriving her of clear driving privileges in Ohio as a result of illegal search and seizure. Her twin daughters became emotionally scarred as a result of being stopped by the OHP and became fearful to ride with the plaintiff to enjoy family time together because of the fear of being stopped by the police.

349.   In May 1993 plaintiff was driving with her twin daughters on Athens County Rd. 17 heading toward Athens four miles away to have lunch and spend the afternoon in town when she was stopped by the OHP. Her license was checked and said to be suspended. Plaintiff's ex-

husband was called to pick up the girls and plaintiff was cited again without Ohio driving privileges which plaintiff alleges were always being unjustly challenged in violation of the plaintiff's U.S. Constitution Fourth Amendment rights and due process and equal protection rights under the Fourteenth Amendment, and whose reinstatement was unlawfully obstructed by the OBMV beginning in 1990.

350. Plaintiff alleges that the OHP knew where plaintiff was as a result of illegal search and seizure in violation of the plaintiff's U.S. Constitution Fourth Amendment rights. Plaintiff alleges that at another time an OHP officer angrily said to plaintiff while a daughter was in the car " Iam tired of listening to you." He expressed inappropriate emotion for a road stop on a county road where plaintiff was not driving dangerously but her license was checked, was still suspended, and plaintiff was ordered out of her car and to walk her daughter the remaining two miles home. Plaintiff's ex-spouse came along about ten minutes later and her daughter was driven home by him. The OHP had left the area. Plaintiff got back in her car, which was parked by the side of the road, and drove home. The OHP clearly did not care if plaintiff's driving privileges were suspended or not. They were clearly just harassing the plaintiff and disrupting her family life.

351. Alternatively, plaintiff alleges that the OHP were aware of an identity fraud conspiracy that suggested that plaintiff was either her sister in N.Y. State or that plaintiff was living with her sister in N.Y. State

352. Plaintiff alleges that the OHP has unlawfully stopped the plaintiff as a motorist and detained her at the roadside as a pedestrian.

353.   Plaintiff was unlawfully detained by the OHP as she waited for a ride  on the side of

U.S.Rt. 50 W near Lottridge,  Ohio in eastern Athens County,  in early February, 1998. The

officer checked her Id. although she was a pedestrian waiting to get a ride into Athens.

354.   Plaintiff alleges that  the OHP  harassed her about needing a ride on April 3, 1999.

Plaintiff was in pain from a backache and was walking in Albany, OH, where she lived at the

time. Plaintiff had been planning to ask someone for a ride to the drug store where she intended

to buy a heating pad, when an OHP patrolman approached plaintiff from behind and  from his

cruiser, shouted " Hey Ellyn, do you need anything. ?"  Plaintiff's backache was the result of an

auto accident in November 1996 to which the OHP had been called.

355.   Plaintiff did not have a valid Ohio driver license. The officer might have been referring to

that fact.  Further, her car was not working because of vandalism. She had filed papers at the

Ohio Supreme Court on October 2, 1998. Her car had a missing gas tank cap when she returned

to it at a parking lot in Columbus, OH that day and subsequently quit running as plaintiff was

driving home.

356.   Plaintiff alleges that her car was vandalized beyond repair as reprisal for filing claims at

the Ohio Supreme Court on October 2, 1998.

357.   Plaintiff was stopped in Alexander Township at the intersection of  Athens County Road

76 and County Road 19 on January 23, 1997 a few miles from her home on Hebbardsville Rd.

(CR 19) as she drove toward her children's house about four miles away. A few hours earlier she

had written a letter to  then Congressman Ted Strickland complaining about illegal search and

seizure in violation of plaintiff's rights and  of a conspiracy to depict the plaintiff's conscientious

identity as that of a handicapped person rather than as a victim-subject of mind reading illegal

search and seizure and a bisexual pacifist. She had mailed the letter at about 4:00pm in the

afternoon and was stopped on the way to check on her daughters in the early evening, at approximately 6:15pm.

358.   Plaintiff alleges that the OHP were interfering in her attempt to visit her teenage daughters who were home alone at the time as they often were. (Plaintiff subsequently initiated a new custody proceeding the following month.) But she alleges that the OHP were also harassing her about writing to Congressman Strickland in stopping her on the county road, where most OHP do not patrol.  They checked plaintiff's license and told her it was suspended. They asked plaintiff if her ex-spouse  would post bail for her if they took her to jail. When plaintiff answered " No", they told plaintiff to drive home and not drive anymore.

359.   Plaintiff was on the way to the eye doctor in Marietta, OH on U.S. Rt. 50 East outside of Athens on February 18, 1997 when she was stopped by the OHP who asked her where she was headed.  She was told to remain stopped for another five minutes until the OHP could leave. After the OHP left the area, plaintiff proceeded on her way to Marietta, OH. Plaintiff alleges that this was an incident of harassment and that the OHP were confusing and frightening to the plaintiff.

360.   Plaintiff alleges that she was routinely permitted to drive at her own discretion 1990 -2004, where the OHP continued to violate her rights (although plaintiff did not have a car and did not drive after October, 1998). Sometimes the OHP would stop her and warn her or sometimes cite her arbitrarily.

361.   Plaintiff was told by  a letter from the Ohio Bureau of Motor Vehicles OBMV in early 1997 that she need only pay the  $12.00 Ohio license reinstatement fee to obtain her Ohio license.

362.   But when she inquired as to getting her license she was told that she could not obtain a reinstated license until she paid outstanding fines some from other states going back to 1989 and 1993.  However, out of state municipalities had not contacted her since 1996.

363.   Plaintiff alleges that in July 1996 plaintiff appeared in court in person in North Hunterdon County, N.J to attempt to clear up her outstanding fines. The OBMV had told plaintiff that if she cleared that outstanding fine  for $135.00 that she would be able to get an Ohio license.

364.   Plaintiff alleges that after she paid that fine however, when she contacted the OBMV, she was told that she owed other fines and could not just pay the reinstatement fee and get a license.

365.   Plaintiff alleges that in February, 2001, she went to the OBMV in Columbus, OH because she was told by OBMV personnel it was easier to address all problems if she appeared  in person.

366.   When plaintiff arrived to pay off her outstanding tickets she was told she owed another $350.00 in N. Y. State which she had not been told about previously when she had asked for a total amount due.

367.   The OBMV employee was smirking and clearly found the entire situation very funny which plaintiff alleges shows the negative bias toward her that the State of Ohio has shown repeatedly and specifically in refusing to address her suspended license situation except to continue rob plaintiff of her rights to a driver license, a property interest created by state law which cannot be deprived without due process.

368.   Plaintiff subsequently squared away those tickets and was finally able to get a license in 2004. But when she went to renew her license in 2008 she was told that she had those same outstanding tickets on her record and couldn't renew. Finally after talking to the court in New York State several times, and several months of wrangling, and a petition to then Governor

Strickland, plaintiff was allowed to renew her driver license. But the incident demonstrates again that there has been official bias against the plaintiff in the State of Ohio and that corrupt practices have been used to illegally interfere with her driving privileges.

369.   Plaintiff alleges that an identity fraud conspiracy which attempted to link the plaintiff to her sister in New York State drove the ongoing and unresolved termination of the plaintiff's driving privileges in Ohio, and that the state did not want to issue the plaintiff a driver license because it would have interfered with a state supported corrupt scheme that suggested that the plaintiff lived in New York State with her sister.

370.   Plaintiff alleges that she went to State of Ohio driver license offices in Athens and Marietta, OH repeatedly between 1999 and 2004 attempting to resolve her license problems, but was always told that her driving privileges were "TERMINATED" and that she should call the state telephone number that they listed to learn the details. But, as stated, when she did go to Columbus to resolve the issues she would always be told there was yet another outstanding citation even though some of the citations repeated.

371.   For example, the plaintiff was arrested at her home in Marietta, OH on September 25, 2003 and taken into custody by a Washington County, "WC" (Ohio), Sheriff deputy who said it was because of a letter she had written to a Marietta local paper that was critical of then President George Bush. The sheriff's deputy also stated that plaintiff owed an outstanding traffic ticket from Athens, OH Municipal Court.

372.   Plaintiff was suing President Bush at the time and her case *Ellyn Burnes v. President George W. Bush et al* was then at the U.S. Court of Appeals for the Sixth Circuit in Cincinnati.

373. But when she got a friend to drive her to the Athens Municipal Court, the next day, after spending a night in jail, she was told by the Athens Municipal Court that the ticket had been resolved in 1997.

374. Plaintiff alleges that on 11-3-11 a white police cruiser pulled up behind her and then passed her on U.S. 50 E. when she was enroute from Athens to Marietta, OH. The car bore the number 13.

375. Plaintiff alleges that on 11-18-11 she was leaving Athens, OH enroute to Marietta, OH on E.State street and merging into U.S. 50 E. when an OHP cruiser pulled out of the OHP headquarters driveway at Della Dr., Athens, and followed the plaintiff a short ways on U.S. 50 E. when it pulled over to the side. Later that day, at approximately 1:30 pm, when plaintiff was working in Marietta, OH an OHP cruiser drove slowly past the place of plaintiff's employment which was on a side street in downtown Marietta.

376. Plaintiff states the above kind of intensive monitoring of her activities is typical and is aided by U.S. government surveillance using satellite tracking, demonstrating that plaintiff's U.S. Constitution Fourth Amendment rights are continuously violated.

377. Plaintiff was driving to Marietta, OH on 4-5-12 on U.S. 50 E. at about 8:11 am when she commented aloud at something she heard on an NPR broadcast on her car radio: "There's no immunity when you're stalking somebody.", plaintiff commented. A minute or so later an OHP cruiser # 722 approached from the opposite direction on U.S. 50 and made a U turn getting right in front of the plaintiff's car. After a short ways he dropped behind the plaintiff and continued to follow her along U.S. 50 E. for several miles.

378. Plaintiff alleges that he had heard what she said in her car, and was stalking her, and harassing her speech in violation of her First and Fourth Amendment rights.

379.   Plaintiff alleges that the OHP continued to stalk her on 4-29-12 when she was leaving town on the Athens bypass headed East at about 6:30 am. At the same time the OHP was headed West on the Athens bypass and passed the plaintiff. When plaintiff returned to Athens at about 7 pm that evening she exited U.S. 50 W onto East State St. in Athens. The OHP passed the plaintiff on East State St. headed East when plaintiff was headed West.

380.   Plaintiff alleges that on 8 - 19- 12, two  OHP officers, driving cars #1049 and # 1501, staked out two of her daughters, her two grandsons, and herself when she and her family went to a Frisch's Big Boy restaurant in Delaware, OH.  at about mid morning.

381.   Plaintiff alleges that she was stopped by the OHP for reasons of harassment on 10-11-12 on East State St. in Athens. Earlier in the morning she was listening to WOUB radio who were having their public radio pledge drive. Plaintiff  had commented, while driving in her car, that Dr. McDavis, President of Ohio University, needed to make a donation to help the pledge drive reach their dollar goal. The OHP officer who plaintiff is fairly certain was driving car #616 asked plaintiff if she knew that she was going 10 MPH too fast? Plaintiff said that she didn't know that although the speed limit changes near there from 25MPH to 35 MPH. Plaintiff was warned but not cited in much the same way that she had been stopped a month to the day earlier on 9-11-12, very near  to the same spot by the APD and warned that she was driving too fast but not cited.

( See # 340)

382.    Plaintiff alleges that on 12-10-12 when went to do her morning exercise at a mall in Athens at 5:55 am, she noticed the OHP in a white OHP suv watching the westernmost mall entrance. She alleges that the OHP were staking her out in violation of her rights.

383.   Plaintiff alleges that when she drove to Marietta, OH on 2-14-13 the OHP were watching as she approached Marietta, OH on Rt. 7 at approximately 9:45am immediately outside town on the right.

**COUNT 12**
**Complaint against the The Athens News, Mr. Bruce Mitchell, and Mr. Tom Eslocker**

384.   Plaintiff incorporates the previous statements # 1 to # 383 .

385.   The Athens News is a newspaper in Athens, OH. Plaintiff is a former employee of The Athens News.

386.   Plaintiff alleges that the basis of her complaint against the Athens News is unlawful intrusion by high tech remote surveillance against plaintiff's right of seclusion and privacy or, alternatively, illegal search and seizure, if the Athens News is acting as an agent for government in violation of the plaintiff's U.S. Constitution Fourth Amendment rights.

387.   Plaintiff alleges that she is a mind reading subject/hostage of the United States government, being unlawfully searched in the content of her thinking continuously 24/7, illegally searched in her conversations and utterances, activities and whereabouts 24/7, and illegally seized in her person and kept from her own freedom and privacy , in violation of her Fourth Amendment and other rights under the United States Constitution and that the Athens News  (and other media) stake her out because of her highly extraordinary circumstances and illegal status.

388.   Plaintiff seeks to restrain the Athens News and its agents from violating the rights of the plaintiff by intrusion, illegal search and seizure, conspiracy and failure to prevent a civil rights conspiracy in violation of the plaintiff's rights.

389.   Plaintiff is a former employee of The Athens News , Athens, Ohio. She states that she was employed from February 1987 until September 1988 and that she resigned in September 1988

because she was being subjected to surveillance and harassment on the job, followed when she was performing her work as an advertising representative as well as in her home and whereabouts generally.

390. Plaintiff alleges that sometime in 1987 or early 1988, while working at the Athens News, the plaintiff became aware that she was being surreptitiously surveilled and that many persons knew that she was being watched but were not forthright concerning her circumstances.

391. Plaintiff states that prior to quitting her employment at the Athens News in September, 1988, the plaintiff had become aware that she was being bugged and wiretapped on office phones and that she would sometimes receive strange phone calls composed, she speculates, for the intruding listener on the line.

392. Plaintiff alleges that she did not know of the mind reading at the time of her employment but that she now believes that the staff of the Athens News knew about the plaintiff's unlawful status as the subject of an ongoing mind reading search during that time.

393. Plaintiff alleges that one front page photograph in particular, while plaintiff was working at the paper, showed the plaintiff unflatteringly in the bodice. Plaintiff alleges that it is evidence of a work environment that was contradictory and becoming hostile. Plaintiff asserts that at the time she thought it was editorial bad judgment, but believes now that she was being pointed at sexistly and obliquely, and the ultimate result of making plaintiff quit her employment was already planned.

394. Plaintiff states that while she was employed by the Athens News from February 1987 to September 1988 she received promotions and raises going from a temporary accounts receivable clerk to permanent advertising representative. She never received criticism of her work performance.

395. Further, other employees suggested that the plaintiff was being bugged by electronic surveillance.

396. Plaintiff alleges that during February 1987 – September, 1988 the Athens News knew that she was being surveilled and that co-workers isolated and shunned her in the last few months that she worked there which she inferred was an illegal inducement to resign because the paper was being bugged any time she was in the office at the very least.

397. Plaintiff was further offended and forced to resign in September 1988 when the Athens News' counsel, Mr. Eslocker, became the attorney also for the plaintiff's former spouse, (Mr. Webb), in the divorce proceedings the plaintiff had brought in June, 1988. Plaintiff subsequently lost custody of her four minor children and was ordered to pay child support. But plaintiff had no job because of a hostile, bugged, work environment whose attorney also represented her ex-husband.

398. Plaintiff alleges that during a conversation in Mr. Mitchell's office in the Spring of 1988, Mr. Mitchell cried and stated that the paper was all he had, but he did not come forth with any information concerning the plaintiff's illegally searched circumstances.

399. Plaintiff alleges, therefore, that because the Athens News was never candid with the plaintiff about the surveillance, illegal search and seizure, or intrusion against plaintiff's right to solitude and unfairly made her work environment hostile and difficult, forcing her to resign, that the Athens News illegally interfered in her economic rights.

400. Plaintiff alleges that the ripple effect of the unresolved illegal search and seizure, and intrusion which the Athens News participated in has unjustly affected her employment for the past twenty five years limiting her employability and placing an unfair burden on her economic

rights not shared by other job candidates so that plaintiff has been unemployed about half of the time in the past twenty five years.

401.   Plaintiff alleges that she believes that she was unfairly blamed by the Athens News  for the surveillance although the paper was participating in surveilling her and plaintiff was never associated with the search but her economic rights were severely impacted for more than twenty five years by the unlawful surveillance activity in which they were/are participating.

402.   Plaintiff alleges, however,  that The Athens News is still bugging her, and has been for more than twenty five years in violation of her United States Constitution Amendment Four rights and privacy rights articulated in the common law of the United States.

401.   Plaintiff alleges that the Athens News is still participating in the conspiracy to violate the plaintiff's rights, that they know that she is being tortured and that she is a mind reading slave under a surveilling U.S. police state.

401.   Alternatively, the Athens News  is still a recipient of information about the plaintiff gained illegally from the police, the military, or the U.S. Justice Department as the result of an illegal search and seizure of the plaintiff and as such the paper acts as if an agent of government in illegally searching stolen personal information about the plaintiff  in violation of her rights.

402.   Plaintiff complained about the illegal search to the paper's owner, Mr. Mitchell in late August or early September, 1988. He replied cryptically that the circumstances were about "one person, one reason" indicating that he was not totally in the dark about the illegal search of the plaintiff but he did not set forth details. Plaintiff quit the paper a few weeks later.

403.   Plaintiff subpoenaed Mr. Mitchell in 1997 in an Athens County Common Pleas Court child custody proceeding for his testimony concerning an illegal search which plaintiff alleged was against the best interests of her then twin teenage daughters implicating the quality of care

76

they were receiving living with their father. Mr. Mitchell responded that he did not know about

any surveillance of the plaintiff and her children which the plaintiff believes was untruthful.

404. Plaintiff asserts that she has complained to the paper in letter form about her extraordinary

and extremely criminal circumstances but that she is ignored concerning her right to privacy and

freedom from illegal search and seizure claims. However, they did publish a letter she wrote

concerning an environmental issue.


## COUNT 13

**For violations of rights by members of the defendant bar associations. Conspiracy to violate plaintiff's First Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights and failure to prevent a civil rights conspiracy under U.S.C. 42 sec. 1985 (3), and 1986.**

405. Plaintiff incorporates the foregoing statements # 1   to #  404.

406.   Defendant bar associations and individual members thereof participated in a conspiracy

during the twenty four years from 1989 to nearly the present day by refusing to represent the

plaintiff while at the same time were fully aware that the plaintiff's status was that of an illegally

searched political prisoner deprived of all privacy rights and that she was the victim of highly

unusual and criminal extraordinary circumstances. During that time defendant members of the

bar were amongst the unlawful recipients of the "fruit of the poisonous tree", stolen personal

information about the plaintiff garnered as a result of an illegal search and seizure in violation of

the plaintiff's U.S. Constitution  Fourth Amendment rights.

407.   Further, defendants, knew that plaintiff was being illegally searched by mind reading

technology, as well as listened to and observed, and that she had no attorney, while her rights

continued to be violated every day and they had unlawful access to her personal information, her

thoughts, whereabouts, activities, conversations, and utterances.

408.   Defendant attorneys in Athens County acted in concert to deny legal representation to the plaintiff while continuing to access illegal search information about the plaintiff.

409.   Plaintiff first became aware of the unprofessional and unlawful conduct of the defendant Athens County Bar Association when she petitioned to be divorced in June, 1988.  Her counsel was Attorney Susan Gwinn of Athens, OH.

410.   Plaintiff alleges Attorney Gwinn advised plaintiff against attending a hearing at which the temporary custody of her four minor children was decided, (June 1988), which plaintiff alleges was deliberate unprofessional malicious misconduct which resulted in the eventual permanent custody award of four minor children to the plaintiff's ex-husband, although plaintiff had been the primary caregiver and a stay at home mother for fourteen consecutive years.

411.   Defendant Gwinn was aware of the illegal search of the plaintiff but remained silent, while continuing to represent plaintiff.

412.   Plaintiff was subjected to harassment by Attorney Gwinn while a client of Ms. Gwinn, and sitting in Attorney Gwinn's office in June 1988 when Attorney Gwinn gossiped loudly during a phone call to Athens Attorney Tim Foran about plaintiff's divorce.  Plaintiff was sitting in a nearby waiting room.

413.   Plaintiff was induced to infer from Attorney Gwinn's unprofessional and unethical behavior that Attorney Gwinn did not want to continue to represent plaintiff. Rather than withdrawing from plaintiff's case, she provided substandard service for reasons of malice. Subsequently, because of Attorney Gwinn's unprofessional conduct, plaintiff fired Attorney Gwinn and subsequently lost the custody of her four minor children as a result of her own pro se representation.

414. Plaintiff was next represented by Attorney Herman Carson of Athens, (July – August 1988) after Ms. Gwinn's removal. Plaintiff fired Mr. Carson because she did not believe she enjoyed secure attorney client privilege, after she saw Mr. Carson waving a cassette tape around on the street in Athens one day as plaintiff approached him.

415. It was during this time that plaintiff had realized that she was intensely scrutinized , that government was watching her, and listening to her and that no conversation was protected from illegal search and intrusion.

416. Plaintiff alleges that beginning at that time, she suffered injury from the extreme speech repression, knowing that her every utterance was bugged, and that her privacy was invaded.

417. Plaintiff alleges that she did not know at the time about the mind reading and still felt that she had some protection in silence.

418. Plaintiff alleges that the public harassment, commentary, and public theater were also for purposes of thinking interrogation by the federal government and their agents, by interrogating the plaintiff's thoughts following street commentary, and suggestion.

420. Plaintiff alleges that even today as these claims are being prepared by plaintiff, she is illegally searched and the content of her claims is leaked daily. Thus, the restraining order that the plaintiff seeks is necessary for the purpose of preparing legal claims in private without scrutiny by those who would seek to exploit and harm the plaintiff further.

421. Plaintiff did not know that she was being illegally searched in her thoughts by mind reading technology until 1992, four years later.

422. Plaintiff was therefore representing herself at her divorce and child custody final hearing on September 28, 1988 and lost her custody petition,. Her ex-husband was awarded full custody of her four children.

423.   There was no custody appeal because plaintiff did not have legal counsel and did not know how to bring an appeal or that an appeal was possible.

424.   The plaintiff believes that she was subjected to systematic unfair treatment by members of the bar ,despite the fact that they were already witnesses to the fact of the plaintiff's unfair and differential treatment by government.

425.   For that reason,  the plaintiff alleges that the members of the bar acted as agents of government in that instance because they were aware of a conspiracy to violate the plaintiff's due process rights by continuing invasion of privacy and illegal search and seizure. In that way, the members of the bar in Athens County and elsewhere furthered a conspiracy to violate plaintiff's due process rights in her divorce proceedings in Athens County in 1988.

426.   Plaintiff states that many times she attempted to become represented by counsel in Athens County and elsewhere but counsel refused to help the plaintiff in her pursuit of redress for the unlawful deprivation of her rights.

427.   In early 1989 plaintiff sought the services of an Attorney Lilley in Logan, OH. When she described her problems his comment was " Oh Ellyn, this is very sad.",  seemed somewhat jocular and sarcastic  and  declined to help.

428.   During the year of 1990, the plaintiff sought many times to become represented by counsel. She spoke to attorneys in Southeastern Ohio and West Virginia.  Specifically, because she was never beyond the surveillance of Athens County, Ohio and the U.S. government,  she was seeking an attorney who would represent her in action against Athens County as well as against state and federal government.

429.   In early January ( 1-4-91) the plaintiff witnessed some kind of military incident in the skies over Athens County, OH, while she was visiting her children at their home. (Plaintiff's

80

children lived with her former spouse.)  The incident itself was marked by a powerful air shock

and an acrid odor filling the air during  the middle of the night.  For months afterwards there

were glowing raindrops on the ground in that area. However, on that particular following

morning there was a heavy frost  because the temperature was cold. (See # 121)

Plaintiff has come to believe that some kind of weapon may have been tested and that she was

exposed to dust which resulted in a subsequent nose bleed.

430.   The plaintiff was committed to the Athens Mental Health Center by the Athens County

Sheriff on the morning following the incident (1-4-91). (See #s 121 -124)

431.   Attorney Gwinn was counsel for the Athens Mental Health Center, (now called

Appalachian Behavioral Healthcare and housed in a different building on different grounds ),  in

January, 1991.  Plaintiff stilled owed Attorney Gwinn  $1002.00 for her terminated services in

1988 which she had never paid. Attorney Gwinn,  representing the State of Ohio,  secured a three

month commitment to detain the plaintiff in the hospital.

432.   Plaintiff thus alleges that the commitment of the plaintiff in the Athens Mental Health

Center in January 1991, shows further maliciousness on the part of Attorney Gwinn, whose

unprofessional conduct had already caused the plaintiff  injury from loss of child custody and

Attorney Gwinn's non-disclosure of  illegal search and seizure.

433.   Plaintiff alleges that commitment as a mental patient in Athens County constituted an

unlawful seizure of the plaintiff's parenting rights, which were property created by state law,

because the plaintiff was subsequently never able to get her parenting rights enforced in Athens

County, although the court and all the attorneys knew that an  injustice had been done to the

plaintiff, an injustice that impinged upon her due process rights in her divorce proceedings.

434.   Plaintiff was subsequently committed in late 1991 for another three month commitment. The commitment was accomplished by the Athens County Sheriff who in initially drove the plaintiff to the Athens County Sheriff's Department and then to the Athens Mental Health Center.

435.   During both commitments in the Athens Mental Health Center, plaintiff requested to speak with counsel.

436.   During the first commitment  Attorney Rick Oremus, of Athens, came to the hospital, one time, to counsel plaintiff. He said to plaintiff: " You gotta play the game."

437.   Plaintiff alleges that she has no idea what if any was the subtext of Attorney Oremus' remark. She was not released. And plaintiff does not know if he made any attempt on behalf of her freedom.

438.   Plaintiff alleges however, the Attorney Oremus' remark points to the corruption inherent in committing the plaintiff to a mental hospital when she was already being illegally searched for several years prior to commitment and being subjected to reprisal by a malicious attorney for the state.

439.   Plaintiff asked for an attorney again in December, 1991 and Attorney Walker of Athens came to the Athens Mental Health Center Hospital.  However, plaintiff was not released and plaintiff does not know if he made any effort on her behalf. He did not come back to the hospital again.

440.   Plaintiff  asserts that she was unlawfully surveilled and detained. But not mentally ill and that it was a convenient ruse for the state and a conspiracy to avoid accountability and damage claims.

441.  Plaintiff asked for forms at the Athens County Courthouse in  June, 1994  to reopen domestic  proceedings against her ex-husband,  because she believed that her minor twin daughters were being neglected  and living in unsanitary conditions.

442.  The Athens County Clerk's  office said that they did not have the forms and sent her to Attorney Foran's office at  SE Ohio Legal Services. Plaintiff found the necessary forms there and she subsequently reopened domestic proceedings for custody of her twin daughters as a pro se litigant.

443.  While she was there, Attorney Foran  sat at a table  and played with a small box or puzzle game and said nothing to the plaintiff.

444.  Attorney  Rick Oremus had  followed the plaintiff to SE Ohio Legal Services that day in June 1994 and was outside the door but did not offer to help the plaintiff. Plaintiff believes he was observing if plaintiff had gone into Attorney Foran's office.

445.  Plaintiff alleges that  Attorney Oremus was not there innocently and was in fact stalking the plaintiff and  deliberately being offensive.

446.  In December, 1994,  plaintiff had an appointment with an Attorney Adair in Dublin, OH. Attorney Adair did not want to take her Fourth Amendment case and plaintiff had mentioned that she believed that the National Security Agency were violating her rights and should be defendants in a suit.

447.  Within minutes after leaving Attorney Adair's office, the plaintiff's car stalled and she was subsequently ticketed  for  her car breaking down in an intersection and driving without insurance,  on  a suspended license, something she did not know of  at the time because she had recently moved.

448.  Plaintiff alleges that her attorney client conversation with Attorney Adair was bugged by the federal government and that the police were called for purposes of harassing her. They had just appeared when her car stalled. Again, plaintiff had no attorney to call.  By the end of the day plaintiff had been relieved of more than six hundred dollars to the Dublin Police Department and her allegedly suspended license had been returned to her.

449.  Plaintiff appeared in Athens Municipal Court on August 9, 1995 before Judge Bennett. Plaintiff had been subjected to many traffic fines in the preceding several years and Judge Bennett was aware of Plaintiff's status, and that the tickets were often legally flawed.

In the proceeding on August 9, 1995 in Athens Municipal Court, Judge Bennett threw out the ticket for which she had appeared.

450.  Following the court appearance, the plaintiff spoke with Attorney Robert Toy at his office and said that she had an illegal search and seizure cause of action and that she wanted to sue the F.B.I. Attorney Toy said that he would need a fee of $2000.00 to start those proceedings which plaintiff did not have.

451.  After leaving Attorney Toy's office, plaintiff was followed into the Athens Parking Garage and arrested by an Athens City Police Officer Gura. Even though Judge Bennett had thrown plaintiff's ticket out, Officer Gura had written a citation on plaintiff because she had driven to court that day on a suspended license. At that point she was living in Parkersburg, WV and had no other way of getting to court.

452.  Back in the courtroom, Judge Bennett set a new hearing date and released plaintiff on her own recognizance.

453.  However, Officer Gura then found an old warrant from the City of Dublin and had arranged for the plaintiff to be transported to the Franklin County, OH, jail to serve time for failure to appear in Dublin several months earlier.

454.  The root cause of these tickets was that the State of Ohio would not issue plaintiff a drivers license and was officially involved in a conspiracy to unlawfully deprive her of her driving privileges in violation of her due process rights.

455.  Plaintiff had no attorney to call and spent a week in part in the Franklin County Jail and in part in the Jackson Pike Workhouse in Columbus, OH. After a week, she was released for time served.

456.  Several times during the early to mid 1990s the plaintiff had public defenders, Attorneys Dan Friese and Rolf Baumgartel of the Athens Public Defenders' Office represent her in her traffic arrests in Athens but none of them were willing to help her defense by pleading a Fourth Amendment violation and entrapment as the reason for the citation. She was always advised to plead no contest.

457.  In November 1996, the plaintiff was rear ended in a traffic accident in Athens County. She suffered whiplash and pinched nerves in her back.

458.  Plaintiff attempted to become represented by Attorney Paul Bertram of Marietta, OH who said he would represent her in her auto accident injury case. However, he subsequently told plaintiff that he could not represent her because of a conflict of interest.

459.  Plaintiff brought suit in November 1998 against Grange Insurance Company and the driver of the truck which had rear ended her. She represented herself pro se.

460.  Several times during the proceedings Judge Goldsberry of Athens County Common Pleas Court advised the plaintiff to find counsel , because her case appeared to have merit

and an attorney would likely take her case on contingency .

461.  Several times thus plaintiff explained to Judge Goldsberry that she  had searched for an attorney, that she had asked several attorneys to help her and that none was available.

462.  Although plaintiff alleged before the court, a conspiracy in Athens County interfering in her pursuit of justice, she was forced to pursue her auto accident injury claims pro se, because no attorney was available, even though taking the case on contingency would have provided payment for services to an attorney.

463.  Plaintiff subsequently  was awarded about $7,000.00 in damages from her own pro se representation in her auto accident injury case.  How much more she could have been awarded with attorney services is not known.

464.  Plaintiff sought advice from Attorney Robe of Athens in 1999, because Judge Goldsberry of the Athens County Common Pleas Court had told the plaintiff to find counsel in her auto accident injury claim case.   Attorney Robe  advised plaintiff to seek spiritual counsel and refused to  represent  the plaintiff.

465.  Subsequently, some months later,  plaintiff passed Attorney Robe on the street in Athens and he said as he passed. " Hi, I didn't recognize you with that red hair. " Plaintiff did not have red hair, and she speculates that the bar conspiracy in Athens is based upon the defamation that plaintiff was somehow associated with her sister in New York State, (which has never been true). Plaintiff's sister had reddish strawberry blond hair for many years.

466.  Plaintiff alleges that the comment refers to identity conspiracy, of which Attorney Robe was aware.

467.  Attorney Russ Funk  has a practice in Marietta, OH.  During the years when plaintiff was doing research at the Washington County Law Library in Marietta, OH,  1997 - 2006 (mostly)

Attorney Funk would come into the library which the plaintiff alleges was not only to do legal research but to track where the plaintiff was which he also knew from government agents informing him of her whereabouts.

468.  In March of 2002, the plaintiff asked for an appointment with Attorney Funk. He declined to represent her.

469.  Attorney Funk would still often appear in the Washington County Law Library when plaintiff had was there and has been at the library as recently as the Fall of 2012 when plaintiff was in the Washington County Law Library.

470.  In May 2009, plaintiff left the Washington County Law Library with a friend of hers. They crossed a street at the Washington County Courthouse in Marietta, OH, and subsequently Attorney Funk had left the law library and followed the plaintiff and her friend to the opposite corner. He then crossed the next street at the same time as plaintiff and her friend which plaintiff found to be deliberately oppressive.

471.  In September, 2006 the plaintiff contacted Attorney Robert Shostak, of Athens, OH and asked him to be her attorney to pursue a Fourth Amendment suit against the government. She left with him a copy of her suit against President George Bush et al which she had filed pro se in 2003. He subsequently returned the suit copy which plaintiff had loaned for background information, and informed plaintiff that he could not represent her.

472.  Plaintiff also asked Attorney David Baer of Athens, OH in late 2006 if he would represent her. He also said that he could not take the case.

473.  Plaintiff again asked Attorney Robert Toy again to represent her in September 2007. He subsequently informed plaintiff on September 11, 2007, leaving a message on her phone, that he

could not take the plaintiff's case. Plaintiff alleges that because of the events of 9/11/01, that though her cause be more right than ever, her chances of finding counsel are virtually nil.

474. In September 2007 plaintiff was prevented from marching in the local Washington County, Ohio (Marietta, OH) fair parade as an individual member of a local environmental group, Neighbors for Clean Air, Marietta, Ohio. Neighbors for Clean Air had a group banner and was distributing literature about local air pollution. (Plaintiff was diagnosed with asthma in 2004.) The night before the parade, the group was informed that they could not march in the parade, although permission had been previously given.

475. Attorney Edward Icove of Cleveland, represented the plaintiff and another environmentalist to defend their First Amendment rights to march and distribute air pollution literature in the Washington County Fair parade. Attorney Icove's representation was pro bono on behalf of Ohio Citizen Action and Neighbors for Clean Air. The Washington County Fair Board settled out of court in 2008.

476. Plaintiff states that she subsequently asked Attorney Icove to represent her in her Fourth Amendment claims. He refused and discouraged the plaintiff from pursuing her claims pro se.

477. Plaintiff alleges that because of a conspiracy to deprive the plaintiff of her U.S. Constitution Fourth Amendment rights in which the defendant bar associations participated that she has been unlawfully obstructed in her pursuit of her own freedom . Her rights to access to court, due process of law and the equal protection of law have also been violated. Because of conspiracy by the defendant bar associations to continue un-remedied illegal search and seizure of the plaintiff, resulting in continuing injury and loss to her rights and property and harm to her person, plaintiff is seeking her freedom as a pro se plaintiff after years of unlawful arrest and

involuntary servitude under a mind reading police state. Unlawful deprivation of First and Fourth Amendment rights constitutes irreparable harm.

477. a.   Because of conspiracy by the defendant bar associations to continue un-remedied illegal search and seizure of the plaintiff plaintiff suffered loss of custody of her four minor children in 1988, despite the fact that she had been the primary care giver for fourteen years and she was found to be an adequate parent.

477.b.   Because of conspiracy by the defendant bar associations to continue un-remedied illegal search and seizure of the plaintiff, plaintiff suffered a subsequent second loss of a custody petition for her two remaining minor children in 1997.

477.c.  Because of conspiracy by the defendant bar associations to continue unremedied illegal search and seizure, plaintiff wrongfully suffered loss of marital property including her home in Athens County, OH .

## COUNT 14

**Complaint of conspiracy, invasion of privacy, against the Mormon Church, Roman Catholic Church and other unknown religious actors and organizations.**

478.   Plaintiff incorporates the previous allegations # 1 - # 477 c. asserting that all claims demonstrate conspiracy, illegal search and seizure, and violation of privacy rights.

479.   Plaintiff asserts that she considers herself a spiritual person and a secular humanist although she occasionally attends a Unitarian Church in Marietta, OH. She states that she is not a Christian and does not ever subscribe to religious dogma of any kind. She considers herself a pacifist and opposed to violence and the bearing of arms.

480.   Plaintiff alleges that she has been stalked by members of the Mormon Church and that it has been an unofficial church community policy and conspiracy to harass the plaintiff. She has

reason to believe that members of the Mormon Church were told of her identity by the U.S. government and have stalked plaintiff because she is an illegally searched unlawfully detained mind reading subject, and bisexual, and is believed to be unchaste, and because plaintiff is politically pro-choice concerning women's reproductive rights.

481.  Plaintiff has reason to believe that two members of the Mormon Church, two young white males ostensibly on mission, stalked plaintiff when she visited at her sister's apartment outside of New York City in Spring, 1996. They rang the door-bell and wanted to come in and talk, but were refused entry by her sister.

482.  Plaintiff believes that she saw the same two young men later in the day in a nearby town where her aunt lived and that they were beside the road to observe who all was in the car that plaintiff was riding in. Further, they were laughing.

483.  Plaintiff alleges that that the above incident ties in with a conspiracy that associates the plaintiff's identity with that of her sister, although the only connection is DNA. Plaintiff does not associate with her sister and only infrequently does she see or speak with her sister for the past twenty years.

484.  Plaintiff believes that the purpose of the conspiracy was to devalue the plaintiff's identity and cause of action as a Fourth Amendment claim and to suggest that plaintiff was willingly associated with her sister concerning her legal claims and/ or under the domination of her sister as if an incompetent.

485.  Plaintiff alleges that she was stalked at her apartment in Marietta, OH by Mormons in 2002 while she was writing legal claims. She heard them talking to her neighbor in the hall and did not answer the door when they knocked.

486.   Plaintiff alleges that she was stalked on the Fourth of July (2005) at her employment in a restaurant in Marietta, Ohio by two Mormon women, who were on an evangelical mission. Plaintiff was their waitress. They requested to visit the plaintiff at her home to speak to plaintiff on her own time which plaintiff declined.

487.   Plaintiff states that when she went to South Africa on a graduate student trip in 2011 concerning the HIV AIDS epidemic in South Africa, one of her classmates on the trip was a Mormon male, (M.W.) who subtly harassed plaintiff on various occasions during the trip. The harassment had a sexual theme and was intended to embarrass the plaintiff suggesting that the classmate knew embarrassing information about the plaintiff.

488.   Plaintiff alleges that after she wrote about the classmate in her notes one evening during the trip, he arrived in the hallway outside her apartment, although he lived on a different floor. He was talking very loudly on the phone and calling one friend after another back home in the United States in such a way that plaintiff believed that she was being threatened with worse harassment. Plaintiff alleges that his behavior is an example of a policy of harassment that was encouraged in his church community.

489.   Plaintiff asserts that during the trip she complained to the Professor who was overseeing the trip because the classmate was very obnoxious and should have known better because he was a doctoral candidate in counseling and in his late thirties.

490.   Plaintiff alleges that, more currently, in July 2012, she was stalked at a current employer by a group of five Mormons. One of the women silently nodded as she looked at the plaintiff which plaintiff assumed to be an admission of stalking guilt on the part of the woman who was nodding.

491. Plaintiff states that a bumper sticker, KEEP ABORTION LEGAL, was scratched off her car where it was parked in front of her house in 2007, which she alleges shows an anti-choice and pro–religion animus.

492. Plaintiff alleges that the Roman Catholic Church has kept track of her for a long time and that she believes that they are associated with illegal search and seizure and are illegal recipients of her personal information.

493. Plaintiff states that does not share her personal information with churches and never has. But she alleges that she has been harassed by religious persons viciously over the course of many years.

494. Plaintiff alleges that the illegal animus of the religious conspiracy targets her as a bisexual woman.

495. Plaintiff alleges that she believes the religious conspiracy has as its goal financial reward and the religious conversion of the plaintiff to Christianity. Several persons who have offered rides to the plaintiff over the years were religious and made a point of inviting the plaintiff to church services.

496. Plaintiff alleges that in 1997 she was stalked by a young man who she knew to be a Mormon on Christmas Day, after she had visited at her children's home when they were living with their father.

497. Plaintiff states that she has been obstructed in walking or riding her bike past St. Paul's R.C. Church (SPRC), an agent of the Roman Catholic church in Athens, OH on several occasions by cars pulling out of the church driveway.

498. Plaintiff states that in 2008 she was riding her bike to work in the dark at or near 6:00am when she noticed a car with motor running sitting in the (SPRC), Catholic Church, driveway

waiting for the plaintiff to pass the church, which plaintiff found frightening.  Thus plaintiff

believes that SPRC church, has access to personal information about the plaintiff that is daily,

and current and knew that she would be riding past there on her way to work.

499.  Plaintiff states that on August 14, 2012 the comedy show Saturday Night Live referred to

"Sheriff Kelly" and "Father Pat " doing the creep" which she asserts are references to Sheriff

Kelly of  Athens County, OH and Father Pat, the former priest at SPRC, who has recently

retired.  Plaintiff alleges that "doing the creep" is a reference to illegal search and seizure of

plaintiff, stalking, and "creep"  intrusion tactics perpetrated by the Athens County Sheriff's

Department and the former priest there.

500.  Plaintiff states that on July 6, 2012 she was parking near her employment which is near the

St. Mary's RC Church in Marietta. She parked on Wooster St. and noticed that an AT& T van

was in the alley behind the SMRC and appeared to be watching plaintiff since it was in the alley

driveway an unusual length of time before exiting the alley and leaving by way of Wooster St.

after plaintiff turned and noticed it.

501.  Plaintiff  alleges that a class of R.C. School children walked passed her home in

Parkersburg, W.V in 1996,  on a class walk, and the teacher mentioned her name, "Ellyn" as

plaintiff looked out of an upstairs window.  Plaintiff alleges the incident demonstrates the

conspiracy to suggest that plaintiff is the *watcher/stalker*.

502.  Plaintiff states that she was assaulted in the genitals at 2:11 pm on March 24, 2013 after

writing the above allegation which shows the reprisal attack by U.S. agents where plaintiff is

complaining about Athens County, OH and the R.C. Church. Immediate reprisal attacks in the

form of microwave assault have occurred many times.

503.   Plaintiff alleges that she is followed daily by persons in cars or on foot, such as when she goes for a walk, and she believes many of those persons are associated with religious organizations.

504.   Plaintiff states that when she did not have a car, she was many times offered rides by religious persons who would often invite her to church, which she declined.

505.   However, plaintiff alleges that she has reason to believe that she was defamed as if a nasty or unchaste person by some religious actors or organizations. She asserts that in 1997 she was called "the devil" when shopping in a grocery store in Belpre, OH. More recently she has been called "bitch" by complete strangers.

506.   Plaintiff asserts that a common suggestion has prevailed that she was an unchaste woman or identified as an unchaste or nasty woman rather than as a political prisoner and person who is not free which she alleges is demonization arising from a kind of witch hunt that denies the human rights crime in plaintiff's  extraordinary circumstances and assassinates the plaintiff's character about her unjustly subjugated status.

507.   Plaintiff alleges that she has reason to believe that some or all religious organizations who are staking her out have violated her right to privacy by unlawful appropriation of her identity. By that she means she believes that they were acting as if they were plaintiff and rendering her anonymous while denying her individual rights as a means to thwart her claims and possibly attempt to benefit from the harm done to the plaintiff.

507. a.   Plaintiff alleges that religious organizations have had unlawful access to the content of her thinking in violation of her U.S. Constitution Fourth Amendment rights.

## COUNT 15

**Complaint against broadcast, news, cable, and communication organizations, National Broadcasting Company, MSNBC, CNN, American Broadcasting Company,  and other unknown communications industry agents for violation of privacy rights, intrusion against seclusion, conspiracy to violate the plaintiff's constitutional rights, failure to prevent a conspiracy to violate the plaintiff's rights, and illegal search and seizure if acting as an agent of government.**

508.   Plaintiff incorporates the previous allegations # 1 – 507 #.

509.   Plaintiff alleges that the broadcasting organizations have been surveilling her since the 1980s because she is a mind reading search subject although she does not know when the surveillance began.

510.   Plaintiff alleges that the nature of the surveillance is such that plaintiff believes that in every minute of her daily  life she  is under  government surveillance which is simultaneously transmitted to the broadcast and news organizations and in the case of AT&T and Verizon likely facilitated by those communications organizations.

511.   Plaintiff believes that the broadcast news industry defendants are illegally acquiring a news story by violating the plaintiff's rights to privacy, seclusion, and freedom from illegal search and seizure, and are participants in a conspiracy in violation of her rights.

512.   Plaintiff alleges that when she watches the named television news organizations that they are able to see the plaintiff at the same time and many times they have nodded at the camera when she tuned in to watch their broadcast.

513.   Plaintiff alleges that Mr. Wolf Blitzer, CNN anchor, is knowledgeable of the unlawful arrest by illegal search and seizure, mind reading, and torture of the plaintiff and that he is knowledgeable of what parties are responsible, how long it has been occurring, and the details of the violations of the plaintiff's rights.

514.   Plaintiff alleges that when she was watching CNN in the early evening ( between 5 and 7

pm) on March 20, 2013 that the anchor, Wolf Blitzer, erred in describing a shooting victim as the

"Colorado Police Chief" (close perhaps not a direct quote).   Plaintiff verbally corrected him

while sitting in her apartment in Athens, OH saying, "the Colorado Prison Chief'. A moment

later Blitzer corrected himself saying 'Colorado Prison Chief' while pointing at the camera.

515.   Plaintiff alleges that the above incident demonstrates that the plaintiff is surveilled by

CNN while she is watching the CNN broadcast.

516.   Plaintiff alleges that the news organizations monitor the plaintiff because she is an

unlawfully arrested hostage and illegal human experimentation subject under U.S. agents

conducting  mind reading and other interference in the brain activity and thinking processes of

the plaintiff.

517.   Further,  plaintiff believes that the broadcast news defendants could corroborate the torture

that plaintiff alleges because they have watched her person and brain waves react

simultaneously.

518.   Further,  plaintiff alleges that the broadcast, news, and communications organizations have

access to the mind reading content of the plaintiff, the data product created by the Department of

Defense in illegally searching the thinking content of the plaintiff's mind. Thus, the plaintiff is

totally deprived of all privacy not only under the U.S. government and their agents defendants,

she is also totally deprived of all privacy under the unlawful search of broadcast, news,  cable

and communications organizations also which she considers to be a data feed.

519.   Plaintiff alleges that she has been similarly illegally searched and monitored by Mr. Brian

Williams of NBC Nightly News and that he is knowledgeable of the circumstances of the

plaintiff's unlawful arrest from illegal search and seizure, what parties are responsible, how long it has been occurring, and the details of the violations of the plaintiff's rights.

519.a.    Plaintiff alleges that former NBC News anchor Tom Brokaw is very knowledgeable of these circumstances and that he also watched the plaintiff as a news anchor. He indicated on one occasion that these circumstances concern " The right to think." while staring at the camera when plaintiff was watching his news broadcast. He also suggested that the Pentagon was responsible for the plaintiff's unlawful detention under outrageous government conduct which the plaintiff believes is the truth.

520.   Plaintiff alleges that the ABC News anchor Diane Sawyer is knowledgeable of the circumstances of the plaintiff's unlawful arrest from illegal search and seizure, what parties are responsible, how long it has been occurring, and the details of the violations of the plaintiff's rights.

521.   Plaintiff alleges that she has attempted to contact various news organizations at various times concerning her circumstances including her former employer, The Athens News of Athens, OH but that she has not been given any answers which she attributes to the circumstances. But news organizations continue to offend the plaintiff by violation of her rights daily.

522.   Plaintiff states that she has watched the Rachel Maddow Show  on MSNBC many times in the past several years. She alleges that she believes that Ms. Maddow has  knowledge of the violation of the plaintiff's rights and that she is a witness to the intrusion against the plaintiff's rights. Ms Maddow concluded her broadcasts on April 5 and 12, 32013 with the sentence: "And now you're going to jail." which may refer to the prison show which follows the Maddow show, but the plaintiff believes that she has been interrogated by mind reading and unfairly threatened.

523.    Plaintiff alleges that she believes that The Rachel Maddow Show has illegally intruded in

violation of the plaintiff's rights while the plaintiff watched the show from her home. On April

18, 2013 Ms. Maddow pointed at the camera when the plaintiff tuned in her broadcast.

524.    Plaintiff alleges that on July 5, 2012 The Rachel Maddow Show used graphics on her

show that referred to a "steamed bun" and "older sister" which plaintiff believes was a thinking

prompt for the purpose of interrogating plaintiff's thoughts about those words and ideas because

the plaintiff is illegally searched by a mind reading search and she believes that NBC has

illegally searched her to determine her guilt or innocence in violation of plaintiff's privacy rights

and her due process rights.

### COUNT 16

**Complaint Against President Barack Obama, and unknown agents for violations First, Fourth, Fifth, Ninth, Thirteenth and Fourteenth Amendment rights; violation of privacy rights, intrusion against seclusion, conspiracy to violate the plaintiff's constitutional rights, and failure to prevent a conspiracy to violate the plaintiff's rights.**

525.    Plaintiff incorporates statements #1 to 524.

526.    Plaintiff alleges that President Barack Obama is fully aware of the plaintiff's unlawful

circumstances, that he is aware that her constitutional rights are being violated, that he

knowingly continues the illegal search of the plaintiff, including the ongoing mind reading

surveillance 24/7, and that she is subject to torture by microwave assault.

527.    Plaintiff states that she has written to President Obama on several occasions to ask him to

restore her constitutional rights by executive order and free her.

528.    Plaintiff alleges that President Obama is fully cognizant of a conspiracy to keep the

plaintiff under mind reading surveillance and not free, indefinitely and as long as she lives.

529.    Plaintiff alleges that President Obama is cognizant of identity fraud conspiracy, a

religious conspiracy that attempts to make plaintiff a slave to religious authority, and a corrupt

scheme to attack the plaintiff in her individual rights as a bisexual woman, denying her access to

court for redress of human rights violations by erroneous suggestions that she is acting in

concert with other people, or that she is unwell or legally incompetent.


## COUNT 17

**Complaint Against AT&T and Verizon, (formerly General Telephone Company) for unlawful deprivation of First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendment Rights, conspiracy to deprive rights, failure to stop a civil rights conspiracy and conspiracy to interfere in plaintiff's family life.**

530.  Plaintiff incorporates the foregoing statements # 1 to # 529.

531.  Plaintiff alleges that the above communications companies conspired as defense

contractors to violate the rights of the plaintiff during the years 1988 through the present day if

not also prior to 1988.

532.  Plaintiff states that she was a residential customer of General Telephone Company

"GTE" , (now Verizon) during the years 1976 through 1989, at two different residential locations

in Alexander Township, and Albany, in Athens County, OH.

533.  Plaintiff alleges that she believes that her phone was being tapped during the late 1980s

and that her conversations were bugged and her privacy invaded in violation of her constitutional

rights. Echo and noise were frequently heard on her residential phone lines.

534.  Plaintiff alleges that during her employment at the Athens News in Athens, Ohio during

1987 and 1988 she believes that her office phone was being tapped.

535.  Plaintiff states that when she complained to a GTE manager, Mr. Philip Ramey, in Athens,

OH in 1988 that she was being bugged, he laughed and said: "We have good news and bad

news." He appeared not at all surprised at her allegations and hinted that religious and media

interests were involved as well in the bugging. He did not answer her questions.

99

536.   Plaintiff alleges that she believes that she has been stalked by and monitored by AT&T vehicles in the Marietta and Athens, OH communities for many years.

537. Plaintiff alleges that she believes phone companies are cognizant of telephone harassment of the plaintiff either by their own employees or that they look the other way.

538.   Because of the intrusion by GTE and AT&T, in violation of plaintiff's rights,  aiding and abetting the unlawful surveillance activities of the U.S. government and their agents including religious organizations, plaintiff states that she did not have a phone for more than twelve years, which caused disruption, stress, and extreme pain to her family life.


### A Prayer For Relief

Wherefore plaintiff respectfully prays:

-   that this court assume jurisdiction of this cause;

-   appoint counsel for the plaintiff because of the extraordinary circumstances that threaten the plaintiff's life daily;

-    order a temporary restraining order and permanent injunction against the defendants pursuant to FRCP Rule  65;

-   award compensatory, necessary, hedonic, and punitive damages to be established;

-   award such other relief as the court deems appropriate.


Respectfully submitted,

Ellyn J. Burnes

Plaintiff *pro se*